[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 528 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 529 
It is an established inference of the common law that the proprietors of land adjoining a public highway are the owners of the fee of said highway: that the rights of the public therein and thereto are no higher or other than those of a mere easement, and that the proprietors on each side presumptively own the soil in fee to the center of the highway. There is no distinction in this respect between the street of a city and highways in the country. (Bissell v. N.Y.C.R.R., 23 N.Y., 61.)
The plaintiffs having shown title to the premises described in the complaint, established a prima facie title to the soil of Sixth street, from its east line to the center thereof westwardly, subject to the public easement.
The construction of the defendants' railroad and the laying of the tracks in Sixth street, so far as the same was laid or constructed east of the center of said street adjoining the plaintiff's premises was consequently an encroachment upon his freehold, and a trespass, and every use thereof by the defendants a continuing trespass, unless they have acquired *Page 530 
the right to construct their railroad in such place under the authority of the legislature or of the common council of Troy.
The nonsuit at the circuit and the decision at general term affirming the same, are put upon the ground that the defendants in constructing their railroad in said street, were not in the commission of any unlawful act, the same being authorized by the acts of the legislature under which the defendants were incorporated and by the common council of Troy.
Under the two acts of 1850 and 1851, the defendants were doubtless authorized to appropriate for the use of their said railroad such streets or parts of streets in Troy as they should deem necessary for the purpose of said corporation, subject to the approval of a majority of all the members elected to the common council of Troy.
When lands are required for railroad purposes, under the general act of 1850, provision is made in that act for the appointment of commissioners of appraisal, to ascertain and appraise the compensation to be made to the owners or persons interested in the real estate proposed to be taken for such purpose, and it is declared that when such lands have been so appraised and compensation made, that all lands so acquired shall be deemed taken for the public use, and all persons who have been made parties to the proceedings shall be divested of all right, estate and interest therein.
It is not pretended that the defendants have acquired any rights in Sixth street under these provisions of the general railroad act, or that the plaintiffs' interest in said street has been divested by any proceedings under said act, or that any appraisal of their damages for the taking and appropriating said street for railroad purposes has been had or any compensation therefor made or paid. The power of the legislature to authorize the taking of any lands, waters, streams, highways or streets, for public purposes, on making due compensation is undoubted; and that such appropriation of land for railroad purposes is a legitimate exercise of the right of eminent domain, has long been settled in this State and is unquestioned. But these defendants claim the right to construct their railroad *Page 531 
in Sixth street without any appraisement of damages or making any compensation to the adjoining owners on said street. This claim is based upon the provisions in the act of June 21, 1851, aforesaid, authorizing the defendants to construct their railroad with one or more tracks through the whole or a portion of said city of Troy, and upon the provision of the general railroad act of 1850, which provides that any corporation organized under said act "may construct its roads across, along or upon any stream of water, water-course, street, highway, plank road, turnpike or canal, which the route of its road shall intersect or touch." (Sub. 5, § 28 of Railroad Act, Laws of 1850, p. 224.)
These provisions of the statute doubtless do confer upon the defendants all the power to construct their railroad in the streets of Troy, which, under the Constitution of the United States, or of this State, the legislature could confer. The dedication of the ground covered by Sixth street to the public, the opening and acceptance of the same by the city authorities, and its occupation and long use as a street gave to the public all the rights which could be ordinarily acquired in a public highway, except under a specific grant of the fee thereof. This right was and is a mere easement, a right of passage for travel as highways are customarily used; and the legislature, as the organ or legislative authority of the public, has undoubted control over this easement the same as it has on all other public rights, and it could undoubtedly delegate a part of its power over highways to local officers. The mayor and common council possessed a derivative part of this legislative power, but its authority could not ascend higher than the source. The acts of the legislature and those of the city of Troy are all legitimate acts of the legislative authority, and are valid so far as the power of the legislature could extend. The legislative grant to the defendants of the right to construct their railroad in the streets of Troy is a mere authority, and it must be exercised without violating any private rights, or if any private rights are impaired, the constitutional compensation must be made. The legislative grant is made and is only *Page 532 
sustainable upon this ground. It saved the defendants the liability to indictment for a nuisance for laying their rails in the streets of the city, and exempts them from all other liabilities as respects the public. It could go no further. It could not take away any private rights without providing for making a just compensation.
The question remains whether the taking and use of a public street or highway for railroad purposes is a new use of the public easement in the street so as to be within the authority or control of the legislature without respect to any private rights in said street. This question this court has distinctly answered in the negative in several cases. The case of Williams v. NewYork Central Railroad (16 N.Y., 97), is a leading and controlling one on this subject. In that case there was the same appropriation of a street, under the legislative authority and the corporate authorities of the city of Syracuse as in this. In that case it was distinctly held that to occupy a street with railroad tracks and use it for railroad purposes is to charge it with a new easement not within the purposes, intent and legal effect of its dedication, as a street or highway, to the public. Judge SELDEN says: "Any one can see that to convert a common highway running over a man's land into a railroad is to imposean additional burden upon the land and greatly to impair its value." And he further says that the dedication of land for the use of a highway is not a dedication of it for the use of a railroad company and that the two uses are essentially different. The same view is reiterated in the case of Carpenter v. TheOswego and Syracuse Railroad Co. (24 N.Y., 655), and in Mahon
v. New York Central Railroad Co. (id., 658.)
It is quite apparent that the use by the public of a highway and the use thereof by a railroad company is essentially different. In the one case every person is at liberty to travel over the highway in any place or part thereof, but he has no exclusive right of occupation of any part thereof except while he is temporarily passing over it. It would be trespass for him to occupy any part of the highway exclusively, for any longer period of time than was necessary for that purpose and the *Page 533 
stoppages incident thereto. But a railroad company takes exclusive and permanent possession of a portion of the street or highway. It lays down its rails upon, or imbeds them in the soil, and thus appropriates a portion of the street to its exclusive use, and for its own particular mode of conveyance. In the one case all persons may travel on the street or highway in their own common modes of conveyance. In the other no one can travel on or over the rails laid down except the railroad company and with their cars specially adapted to the tracks. In one case the use is general and open alike to all. In the other it is peculiar and exclusive.
It is true that the actual use of the street by the railroad may not be so absolute and constant as to exclude the public also from its use. With a single track, and particularly if the cars used upon it were propelled by horse power, the interruption of the public easement in the street might be very trifling and of no practical consequence to the public at large. But this consideration cannot affect the question of right of property or of the increase of the burden upon the soil. It would present simply a question of degree in respect to the enlargement of the easement and would not affect the principle that the use of a street for the purpose of a railroad imposed upon it is a new burden.
But in this case the increased burden imposed upon the street is very marked and unquestionable, and must be a serious interruption to the public easement and a very great injury to the adjoining owners. The construction of eight tracks in the street, with sixteen rails, amounts, I should think, nearly to a practical appropriation of the whole street for railroad purposes, and to the virtual exclusion therefrom of the public and all other modes of conveyance. If the title to Sixth street were in the city of Troy, as the fee of streets is in the city of New York, the mayor and common council might perhaps have authorized such appropriation of the street without compensation to the adjoining owners; but in the absence of any such proof, and assuming the title to be, as is the proof, in the adjoining proprietors, the laying down of *Page 534 
such tracks in Sixth street was a palpable invasion of the plaintiffs' rights. The nonsuit in this case was therefore erroneously granted. It was error in the circuit judge to hold, as he did, that the defendants in building their road in Sixth street were in the lawful exercise of their legal rights and powers, and were not liable to the plaintiffs for damages to their land and property adjacent to the street.
In the first count of the plaintiffs' complaint they set out a complete cause of action in ejectment, and claimed to be entitled to recover that portion of the street eastwardly of the center thereof subject to the public easement. The defendants have put down their rails and tracks on the plaintiffs' premises, and claim to exercise and are in the constant exercise of acts of ownership over a portion thereof exclusively, and claim a right to place and retain their tracks in said street in that portion thereof of which the fee is vested in the plaintiffs. According to the decision of this court in Carpenter v. Oswego andSyracuse Railroad Company, the plaintiffs were entitled to maintain ejectment to recover such part of the said street, to remove the rails of the defendants' road therefrom.
The second count is trespass. Under this count, as every entry of the defendant upon the said street in the exercise of their claim to an exclusive use thereof was a trespass and an unauthorized intrusion upon the plaintiffs' premises, the plaintiffs were clearly entitled to recover some damages. (3 Hill, 567.) What the extent or measure of such damages would be, and upon what principle they should be assessed, are questions which are not now properly before the court. It is sufficient for us to decide that the plaintiffs were improperly nonsuited, and that they were entitled to recover under either count of the complaint. The judgment should, therefore, be reversed, and a new trial ordered, costs to abide the event.
DENIO, Ch. J., DAVIES, SELDEN and ALLEN, Js., concurred.