*JUNE TERM, 1868.*     **455**

City of Clinton v. Cedar Rapids and Missouri River R. R. Co.

# THE CITY OF CLINTON v. THE CEDAR RAPIDS AND MISSOURI RIVER RAILROAD COMPANY.

## I. Per CURIAM.

1. **Railroad:** LEGISLATIVE AUTHORITY. By the act of March 26, 1860, the act of congress of June 2, 1864, and the amendment of its articles of incorporation, the Cedar Rapids and Missouri River Railroad company are authorized to build a railroad from Lyons, in Clinton county, to a point of intersection with the Chicago, Iowa and Nebraska railroad, within the corporate limits of the city of Clinton.

2. —— CONSTITUTIONAL LAW. Said act of March, 1860, authorizing the building of said railroad from Lyons to Clinton, is not one of the cases where the law must be general and of uniform operation throughout the State, contemplated by article 3, section 30 of the State Constitution, and is not in conflict therewith.

3. **Corporation municipal:** RAILROADS: APPROPRIATION OF STREETS FOR. Where the fee of the streets in a city is vested in the corporation in trust for the public, the legislature may authorize them to be used by a railroad company in the construction of its road without the consent of the city and without compensation.

   > *Argu.* 1. LEGISLATIVE POWER. The English doctrine that the King cannot force a new charter upon a corporation, has no application in this country to the power of the legislature. The latter may incorporate a place without its consent, and without its consent qualify, abridge or abolish its municipal powers.

   > *Argu.* 2. STREETS NOT PRIVATE PROPERTY. The streets of a city are not the private property of the corporation in such a sense as to necessarily entitle it to compensation for the additional public use, the same as a private proprietor holding the fee.

4. —— PRINCIPLE APPLIED. It was accordingly *held*, that the act of March 26, 1860, and legislation connected therewith, granting the lands before granted to and resumed from the Iowa Central Air Line railroad to the Cedar Rapids and Missouri River Railroad company, on condition that it should build a railroad from the city of Lyons to a point of intersection with the Chicago, Iowa and Nebraska railroad, within the corporate limits of the city of Clinton, conferred upon said Cedar Rapids and Missouri River Railroad company all requisite power to use so much of the streets of Clinton as was necessary in the construction of said road as designated, without the consent of the city and without awarding it compensation. And it appearing that the railroad company had, in the selection of its route within the city, duly respected the grades of the streets,

and avoided the use of them so far as practicable, an injunction, enjoining the company from constructing its road within the city, was ordered to be dissolved.

## II. Per WRIGHT and BECK, JJ.

5. —— GENERAL RIGHT OF WAY ACT. The same result is reached under the general right of way act. This gives to the railroad company, subject to equitable control to prevent the abuse of power, the right, so far as is reasonably necessary, to use the streets of the city without making compensation for the right of way.

## III. Per COLE, J.

6. —— While the railroad company would have the right to thus occupy the streets of the city, the city has such an interest therein as to be entitled to compensation for any damages resulting from such occupation.

## *Appeal from Clinton District Court.*

## TUESDAY, MAY 12.

MUNICIPAL CORPORATIONS: POWER OVER STREETS, ETC.: RIGHT OF WAY ACT, ETC. — This suit is brought by the city of Clinton in its corporate capacity. The petition, filed in 1867, alleges the incorporation of the city of Clinton by an act of the General Assembly, approved January 26, 1857 ; refers to the powers given to the city by the incoporating act over its streets and highways, and alleges that it has refused to grant the defendant's application to construct its road through its streets. It further alleges that the defendant, in 1864, attempted to build its road through certain streets of the city, and was enjoined as long as the causes stated in that petition should exist. It is also alleged, that, in 1859, the city council passed an ordinance prohibiting any " railroad company from constructing its track through or upon any street within the limits of the city, and from occupying the same for right

City of Clinton v. Cedar Rapids and Missouri River R. R. Co.

of way or other railroad purposes," and expressly ordaining also that no " railroad company shall hereafter be permitted to construct its track across any alley, street or avenue in the limits of the city, at or near the grade of such alley, street or avenue, or otherwise than over or under the same; and any railroad company so crossing any alley, street or avenue, within the limits of this city, shall be required to provide, construct and maintain such abutments, bridges and other facilities for travel, as the city council shall determine."

The petition alleges, that the defendant is a corporation created and existing for the purpose of building a railroad from Cedar Rapids, in Linn county (eighty-two miles west from Clinton), to Council Bluffs, on the Missouri river, and that the city of Clinton is not between the *termini* of said road.  The petition also alleges, that, notwithstanding the special refusal of the city to grant the defendant the right to use its streets, notwithstanding the former injunction, and notwithstanding the ordinance of the city above referred to, the defendant, in August, 1867, entered upon certain streets of the city, and commenced to dig in the same, and to prepare the same for laying down thereon its road.

The prayer is for an injunction to restrain the defendant from taking or using, for the purpose of its railroad track, any of the streets of the city.  The answer admits that plaintiff is a municipal corporation, and that defendant is a private corporation as alleged, but denies that the only purpose of the defendant's existence and organization is to build a road from Cedar Rapids to Council Bluffs.  The answer then sets forth, that by the amended articles of defendant's incorporation (amended in June, 1867), it is provided, that " Another portion or division of said road shall be built and operated from Pearl street, in Lyons city, to a point of intersection with the Chicago,

City of Clinton v. Cedar Rapids and Missouri River R. R. Co.

Iowa and Nebraska railroad, within the corporate limits of Clinton city."

The answer also alleges, that the Chicago, Iowa and Nebraska Railroad company has a line of road in operation from Clinton city to Cedar Rapids; that the defendant has in operation a road from Cedar Rapids to Council Bluffs, and that the proposed road from Lyons city (provided for in the amended articles of incorporation of the defendant) will form, when completed, one continuous line of railway across the State from Lyons city to Council Bluffs.

The answer refers to the act of March 26, 1860 (Special Laws, 1860, p. 40), entitled, "An act to carry into execution the trust conferred upon the State of Iowa, in respect to the lands granted by an act of congress approved May 15, 1856, to aid in the construction of a railroad from Lyons city across the State of Iowa, and near the forty-second parallel, to the Missouri river;" and to the act of congress approved June 2, 1864, entitled, "An act to amend an act making a grant of lands to the State of Iowa," and approved May 15, 1856, and claims, that it is thereby made the duty of the defendant to construct a road from Pearl street, in Lyons city, to a point of intersection with the Chicago, Iowa and Nebraska railroad, within the limits of the city of Clinton.

The answer admits the refusal of the city council, of the plaintiff, in May, 1864, to allow defendant to build its road upon any of the streets of Clinton. Admits the proceedings in the District Court, in 1864, by which defendant was enjoined from using the streets of the city "so long as the causes stated in said petition (filed in 1864) exist;" but denies that the same causes now exist, because, since that time, to wit, in June, 1867, the defendant's articles of incorporation have been amended as above stated, by which it has express power to build the

proposed road. Denies the validity of the city ordinance of 1859, and says the same is in conflict with the laws of the State. Admits that it proposes to build said road, and to occupy so much of the streets of the city as is necessary, and no more, in order to intersect, as required, with the Chicago, Iowa and Nebraska railroad, within the corporate limits of Clinton city.

The answer then sets up, that the route selected avoids, as far as practicable, the streets and public grounds of the city, and exhibits a diagram of the route; that, as to the location and construction of the road within the city, defendant is willing to be governed to a reasonable extent by the wishes of the city council; to conform as nearly as practicable to the grade of the streets, and to submit to all proper regulating ordinances; that the selected route does not pass through the populous and highly improved portions of the city, and that it is impracticable to build the road required by the act of 1860, without passing over some of the streets of the city of Clinton; that, as far as practicable, the route has been laid through private property in said city, and steps have been taken to procure the right of way; that it does not propose to occupy the whole length of River street, but that it cannot construct its line without passing over some part of it.

The answer alleges, that if the city is entitled to damages under the right of way act (Rev. p. 218, art. 3), the defendant is willing to have the same assessed and paid to the city before constructing its road.

This diagram shows, that the line adopted, as soon as it enters the corporate limits of Clinton city, instead of following and pursuing its course along River street, leaves that street (though the more direct and practicable route would have been to have kept upon it) and passes through private property, viz., blocks 2, 3, 4 and 5, near

to and parallel with River street. As it leaves block 5, the line adopted starts on a curve toward the point of intersection with the Chicago, Iowa and Nebraska railroad, passing lengthwise on River street in front of one block only, which is subdivided into lots, and two small or fractional blocks, not platted into lots, as shown on the diagram, and which are, as stated in the affidavits, low and subject to overflow, "in consequence of which there is very little improvement in that part of the city."

On the filing of this answer, a motion was made by the defendant to dissolve a temporary injunction which had been issued. The motion specified the following grounds:

1. The writ was improperly granted.

2. The allegations of the petition are denied by the answer.

3. The answer states facts in avoidance of the allegations of the petition, and shows cause for a dissolution of the injunction.

This motion was supported by affidavits showing that the articles of incorporation of the defendant were amended in June, 1867, as set forth in the answer. And showing that the allegations of the answer as to the route selected within the limits of the city, were substantially true.

The District Court refused to dissolve the injunction, upon the ground, that, as the judge understood the decision of the Supreme Court in *Millburn* v. *Chicago, Iowa and Nebraska R. R. Co.* (12 Iowa, 246)—from which, however, his own opinion differed—"the right to construct a railway upon or over the streets of a city was dependent upon the consent of such city."

The present appeal by the defendant, is from the order of the District Court refusing to dissolve the injunction.

*Isaac Cook* and *A. R. Cotton* for the appellant.

The main question is, can the defendant construct its railroad within the corporate limits of Clinton city, without the consent of the city, it being admitted that the road, if built, must necessarily pass over streets and public grounds?

The same question, stated in other words, is, has the legislature given to the municipality of Clinton such power that it can defeat the construction of a railroad required by public law and demanded by public utility?

For the laws requiring this branch road to be built, and at the same time prescribing a penalty for not building it, see Laws of Iowa, 1860, p. 40; U. S. Statutes at Large, 1864, p. 98.

The corporation of Clinton is a public municipal corporation, created for public purposes only, and can exercise no powers but such as are expressly granted by law, or such as are incidental to those expressly granted, and is always subject to legislative control. See act incorporating Clinton city, Laws of 1857, p. 132.

This act gives the city no powers different from other like corporations. This, and the act granting to railroad companies the right of way (Rev. p. 218), and those relating to the branch road, cited above, are the only statutes bearing upon the question.

Municipal corporations cannot, without legislative authority, license the building of railroads in their public streets. *Davis et al.* v. *Mayor of New York*, 14 N. Y. 506; *Williams* v. *N. Y. Central R. R. Co.*, 16 id. 97; *Milhan* v. *Sharp*, 27 id. 611; *Morris and Essex R. R. Co.* v. *City of Newark*, 2 Stockton, 352.

They cannot prohibit it where there is legislative authority. *Philadelphia and Trenton Railroad case*, 6 Wharton, 25; *The Inhabitants of Springfield* v. *The*

*Connecticut River R. R. Co.*, 4 Cushing, 63; *People* v. *Kerr*, 27 N. Y. 188; Pierce on Railroads, 183, 184; *Cleveland, etc., R. R. Co.* v. *City of Erie*, 27 Penn. 380; *Comm.* v. *Erie and N. E. R. R. Co.*, id. 339.

Our right of way act (§ 8) gives the right to railroads to occupy highways. *Millburn et al.* v. *The City of Cedar Rapids et al.*, 12 Iowa, 246. And that, whether in the city or country. See Rev. 1860, p. 220, § 9.

*W. E. Leffingwell, E. S. Bailey* and *M. H. Tyrrell* for the appellee.

From the argument of Mr. Tyrrell, the following points are condensed; the arguments of the other counsel for the city not found on the reporter's file:

1. The ultimate property in, and control over, the streets in the city of Clinton, were originally in the State.

2. The State granted this property and this control to the plaintiff in and by the act of incorporation.

3. The plaintiff has constantly possessed that property and exercised that power.

4. The State has not resumed the grant made to the plaintiff, and could not resume it while duly enjoyed by the plaintiff, on any pretext nor for any purpose other than for public use. It is not claimed that the public needs the streets in question for the public's railway, and further, if so required, the process by which the donor can acquire the power has not been had. *Williams* v. *N. Y. Central R. R. Co.*, 16 N. Y. 97; *The Presby. Society* v. *Auburn*, 3 Hill, 507; *Morris* v. *The City of Newark*, 2 Stock. Ch. 352.

5. The Supreme Court of this State has indorsed the sacredness of the rights claimed by the plaintiff. *Millburn et al.* v. *The City of Cedar Rapids*, 12 Iowa, 246.

The King, or State, cannot force a new charter upon a municipality, nor abridge its powers. "There is a vast

deal of difference between a *new* charter granted to a *new* corporation (who must take it as it is given), and a new charter given to a corporation *already in being*, and acting under a former charter, or under prescriptive usage. The latter, a corporation already existing, is not obliged to accept the new charter *in toto*, and to receive either all or none of it; they may act partly under it, and partly under their old charter or prescription." Per Lord MANSFIELD, Ch. J., and WILMOT, J., in *Rex* v. *Vice Chancellor, etc., of Cambridge*, 3 Burr, 1656–1661; *Mayor and Commonalty of Colchester* v. *Scaber*, id. 1866–1870; *Haddock's case*, Raym. 435.

Ancient authorities on this point are not scarce. In *Corporation of Colchester* v. *Scaber*, in 1766, WILMOT, J., says: "When a corporation accepts a new charter, it remains the same as it did before. *Haddock's case*, Raym. 435; *Scarborough's case*, 3 Lev. 237. If the corporation were dissolved, the lands would revert to the donor; and the King, by his new charter, could not divest those rights, and regrant them to the new corporation." YATES, J., of the same opinion, and cites *Lutterel's case*, 4 Rep. 86; *Wells' case*, 1 Lutw. 508; ASTON, J., of the same opinion.

If the State cannot impose a new charter, how can it inflict a piece of one on a corporation in being? If the King may not abridge one power, how can he abolish all the privileges of a municipality?

The legislative branch of the State government is, doubtless, supreme in its special and peculiar department; but its powers and sphere of action are well defined and limited by the Constitution and co-ordinate departments of the State. When the State of Iowa incorporated the city of Clinton, the plaintiff, the mode of visiting the corporation, correcting its action, or abrogating its franchise was by *quo warranto*, or its equivalent, and which

could be exercised by the State only after the corporation had done wrong or failed to do right, as prescribed by the act of endowment, and the amendments thereto and limitations thereof required or warranted by the common weal — the good of the public.

DILLON, Ch. J. — The city of Clinton asks for the injunc-

1. RAILROAD: legislative authority.

tion upon substantially two main grounds: 1. That the defendant, by its articles of incorporation, is not authorized to build the proposed road from Lyons city to Clinton city; but only to build a road from Cedar Rapids westward to the Missouri river. 2. The common council of the city of Clinton having refused to give its consent to allow any of the streets of the city, or any portion of such streets, to be used by the defendant for the purpose of building its road thereon, the railroad company has no right thus to use the streets, and the city has the right to enjoin it from so doing.

It is necessary to a full understanding of the important questions arising on this appeal to refer to the legislative history of the proposed road.

In May, 1856, congress granted to the State of Iowa lands to aid in the construction of certain railroads in the State. In July, 1856, the general assembly of Iowa conferred upon a corporation known as the Iowa Central Air Line Railroad company, a certain portion of these lands, to aid in the construction of a railroad from *Lyons city*, north-westerly to a point of intersection with the main line of the Iowa Central Air Line railroad, near Maquoketa; thence on said main line, running as near as practicable to the forty-second parellel, across the State to the Missouri river.

The Iowa Central Air Line company having "wholly failed to perform" the conditions of the grant to it, the general assembly of the State of Iowa, on the 17th of

March, 1860 (Special Acts, 1860, p. 29), resumed the lands which had been conferred upon that company.

On the 26th day of the same March, the general assembly, having thus resumed these lands, conferred the same, subject to certain conditions, upon the defendant in the present suit, viz., the Cedar Rapids and Missouri River Railroad company. Special Acts, 1860, p. 40.

This latter company had been organized in 1859, under the general incorporation act, for the purpose of building a road " to commence at or near Cedar Rapids, on the Cedar river, and to run thence westerly, as nearly as practicable or expedient, on the forty-second parallel, across the State to the Missouri river."

Meanwhile, that is, between 1856 and 1860, another company, viz., the Chicago, Iowa and Nebraska Railroad company, had, unaided by any grant, and with a rapidity at that time unexampled, built and put in operation its road, from the city of Clinton to the city of Cedar Rapids, a distance of about eighty-two miles. Meanwhile, also, the city of Clinton, only about *two miles* distant from the city of Lyons, sprang into existence, the child of the railroad of which it was the initial point on the Mississippi.

Thus matters stood at the session of the general assembly of 1860.

Lyons, though named in the act of congress of 1856 making the grant of lands to the State, as the commencement point of the road to be built on the forty-second parallel, and also thus named in the grant by the State to the Air Line company, was as yet without any road.

The defendant, the Cedar Rapids company, asked to have the lands, which had been resumed a few days before, conferred upon it. This the general assembly did (Special Acts, 1860, p. 40), upon certain conditions. As applicable to the present controversy, those conditions

are set forth in section six of the act, and are as follows:

"SEC. 6. And it is further expressly provided, that the said company [the defendant herein] shall build, or cause to be built, before the 1st day of January, 1861, a railroad of like guage and equal in quality to the Chicago, Iowa and Nebraska railroad, from Pearl street, in Lyons city, to a point of intersection with the said Chicago, Iowa and Nebraska railroad, within the corporate limits of Clinton city, with such switches and side tracks as the business of the said town of Lyons may require, and to operate the same by running passenger and freight cars of the same class with those used by the Chicago, Iowa and Nebraska railroad, in close connection forever with all regular trains at any time run on said Chicago, Iowa and Nebraska railroad, without any unnecessary delay at said point of intersection; and the charge per mile for freight and passengers shall never exceed the regular charges on the Chicago, Iowa and Nebraska railroad; the intent and meaning of this section being to secure to the citizens of Lyons the same privileges and benefits of a railroad connection that are enjoyed by any other place on said Chicago, Iowa and Nebraska railroad; and it is hereby expressly provided, that no lands shall be certified by the governor to said Cedar Rapids and Missouri River Railroad company until they have complied with the requirements of this section." Acts, 1860, § 6, p. 43.

This section has been copied in full, because each of its parts bear unmistakable testimony to the earnest and anxious purpose of the legislature to secure to Lyons city the benefit of a railroad connection by means of the grant of these lands, in the diposition of which it had, so to speak, such an equity.

By the act of congress of June 2, 1864, the time for building this road from Lyons to Clinton was extended.

City of Clinton v. Cedar Rapids and Missouri River R. R. Co.

We are now prepared to examine the objections made by the city to this act of 1860, and to the right of the defendant to build the road in controversy.

I. It is urged, " that, at the passage of the act of 1860 (Special Laws, 1860, p. 40), the defendant was incapable of accepting the grant or complying with its conditions, nor did it have the power to do so until it amended its articles of incorporation in 1867, nearly six years after the statute had expired by limitation."

The defendant was duly incorporated in 1859, with power to build the road from Cedar Rapids to the Missouri, and, of course, it had power as such corporation to accept the grant. But the principal point of objection is, that by its articles of incorporation, as they originally stood, and as they continued to stand down to 1867, the defendant had no legal power to build the road from Pearl street, in Lyons, to Clinton city, as required by the sixth section of the act of 1860.

A sufficient answer to this objection is, that the time for building this road was extended as above shown; and before this suit was brought, the defendant had amended its articles of incorporation so as to give it, *in terms*, the power to build the very road mentioned in section six of the act of 1860.

It is thus seen that the defendant is authorized by law to build the road in question. Therefore the alleged ground for the injunction, based upon such want of authority, fails.

II. It is next claimed by the counsel for the city, that the act of 1860 (Special Acts, 1860, p. 40), " so far as it 2. —— consti- undertook to authorize the building of a particutional law. ticular railroad, is in conflict with the thirtieth section of article three of the Constitution, and therefore void."

The section of the Constitution referred to, after

enumerating certain subjects upon which "the general assembly shall not pass local or special laws," continues thus, "and in all other cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout the State."

Why the act of 1860 (Laws of 1860, p. 40) is in conflict with this requirement of the Constitution, we do not see.

The object of that act was, to execute certain trusts confided to the State to secure the building of a railroad on a particular route. Such a road, it is evident, must be built by some designated company.

The general assembly had to make this designation. They did so, and named the company in the act in question, making it the grantee or donee of the lands and privileges authorized by the act of congress. This is not one of the contemplated cases where the law shall be "general and of uniform operation throughout the State."

This conclusion is not inconsistent with the prior cases on this subject decided by this court and referred to by the appellee's counsel.

III. This brings us to the next ground for the injunction, which is, that the railroad-defendant has no right to build its track upon any of the streets of the city against its consent. The plaintiff was created a municipal corporation by "An act to incorporate the city of Clinton," approved January 26, 1857.

*3. CORPORA-TION MUNICIPAL: railroad: appropriation of streets for.*

By it, the city was invested with the following powers respecting streets:

"To establish the grade of the streets, alleys and wharves, and to change that of the wharves at pleasure, and that of a street or alley upon the petition of two-thirds of the value of the real property on both sides the street where the change is desired."

."14th. To cause the streets and alleys of the city to be paved, and the pavement to be repaired," etc.

"17th. To establish and locate streets and alleys, and to vacate the same upon the petition of two-thirds the value of the real property on both sides the street or alley where the change is desired."

: It is said in argument, that at the charter election, held April 5, 1859, the city adopted a new charter, of which "sec. 27" is as follows:

"The council shall have the exclusive care, supervision and control of all public highways, bridges, streets, alleys, parks, commons, levees and landings within the city, and may cause the same to be kept open and in repair, and free from all obstructions and nuisances."

We do not stop to inquire under or by virtue of what authority, the city adopted the new charter.

These are all the provisions referred to by the counsel for the city as material to the present controversy. The fee of the streets, it is conceded, is in the city, in trust for the public.

By virtue of these charter provisions and this owner-ship of the fee, the city claims, that it has the *exclusive control* of the streets, and therefore it may consent to or prohibit, as by its common council it shall deem best for the public interest, the use of its streets for railway pur-poses, and that the courts cannot interfere with or control the decision of the common council respecting this mat-ter, whatever that decision may be.

If these were all the provisions of the law applicable to this subject, the position of the city might, and I think would be, well taken. But there are two other statutes which have a material bearing upon this subject, and which are relied on by the defendant to support the claim which it makes of a right (subject to reasonable police and other regulations) to use such portions of the

City of Clinton v. Cedar Rapids and Missouri River R. R. Co.

public streets of the city as are necessary to enable it to construct the road in question.

The first of these statutes is, "An act granting to rail-road companies the right of way." Rev. 218, art. 3, passed in A. D. 1853. The other statute is, the act of 1860 (Laws, 1860, p. 40), so often previously referred to in this opinion.

The former statute—the right of way act—under-went examination, and was construed in the case of *Mill-burn* v. *The City of Cedar Rapids and The Chicago, Iowa and Nebraska R. R. Co.* (12 Iowa, 246). As the counsel for each party claims this decision to be in his favor, and as the learned judge of the District Court regarded it as decisive in favor of the city, it is necessary to ascertain what was thereby decided. In that case, the plaintiffs were. lot owners on Jefferson street, in Cedar Rapids.

The defendants were the City of Cedar Rapids and the Chicago, Iowa and Nebraska Railroad company. The railroad company, by the *express authority* of the city council, proposed to lay down its track on Jefferson street. Under these circumstances, the plaintiffs, the ad-jacent lot owners, sought to enjoin the railroad company from constructing its road along or upon the street. This court decided, that they were not entitled to the injunc-tion. In stating the grounds of that decision, the court held, that, under our statute, the *fee* of the streets was in the corporation in trust for the public, and not, as at common law, in the owners of lots fronting thereon. And on this point the doctrine of the Millburn case has since been followed. See *City of Des Moines* v. *Hall* (*ante*).

The city holds the fee, but in trust for the public, not the people of the city alone, but the general public as well. To enable it to protect this trust property from

HARVARD LAW SCHOOL LIBRARY

invasions, to enable it the better to discharge various municipal duties proper, such as providing sewerage, digging public cisterns, laying down pipes therein, etc., etc., and perhaps to compensate it for the burdens arising from making improvements and repairs, *the fee, the soil of the streets*, is in the corporation, but the *use* is in the public. Having determined this point, and in my opinion determined it correctly, the court says: "It follows, in our judgment, that the complainants in this case (i. e., the adjoining lot owners) have no rights of soil in Jefferson street, in said city, which have or can be violated by the construction of the railroad in question, and, therefore, cannot object to the progress of said work, till compensation is made for the right of way." This conclusion logically results from the premises adopted by the court, viz., that the lot owner has no *special* interest in, or title to, the soil or use of the street. See *People* v. *Kerr*, 27 N. Y. 188, 198, 212.

The lot owners also made the point in the Millburn case, that the proposed railroad on Jefferson street would be a public nuisance causing special injury to them.

The court held, that such a use of a street could not be regarded as a nuisance, because the right of way act of 1853 conferred this power upon "all railroad companies in this State." If the right of way law does confer this power, the conclusion arrived at is undeniably correct. For it is well settled, and most reasonable in itself, that what has been authorized to be done by a constitutional act of the legislature cannot be regarded in law as a nuisance, and proceeded against as such in the courts.

It has above been stated, that the court, in the Millburn case, construed the right of way act of 1853 to give railroad companies the power to run upon the streets of cities. After quoting section eight of this act, and commenting on it, the opinion in the Millburn case (12 Iowa,

259) uses this language: "In the sense of our statutes, the words 'over' and 'upon' are synonymous, and without giving it an unduly liberal construction, we can safely conclude that the legislature did mean, by such language, to give to railway companies the privilege of running their tracks upon highways in the country, and streets in the city; but not without obtaining, in addition to this legislative authority, the right of way from the party or corporation holding the fee in such easements, for the reason that it has been held, that such an appropriation of a common highway is the imposition of an additional burden upon it, and is the taking of the property of the owner of the fee within the meaning of the constitutional provision, which prohibits such taking without compensation." Citing *Williams* v. *The N. Y. Central R. R. Co.*, 2 E. P. Smith (16 N. Y.), 97; and *The Presby. Society* v. *Auburn R. R. Co.*, 3 Hill (N. Y.) 567.

In reference to the extract just made, it seems necessary to observe, that the point whether the right of way act did give to railroads the right to occupy the streets of the city, was necessarily involved in one of the questions made, viz., that such a use of the streets was a nuisance against which the plaintiffs were entitled to relief. This objection was answered, if the right of way act gave the railroad company the right.

It may also be observed, that, inasmuch as the city council of Cedar Rapids had passed an ordinance granting the railroad company the use of Jefferson street, and was not contesting its right to do so, strictly, the court was not required to give any opinion as to what would be the rights of the city in the case of an adversary proceeding against it. Therefore, the statement in that case, that the right given by the right of way act to railroad companies to use the streets of a city for their tracks, was a right which must also be obtained from the "corporation

holding the fee," must probably be regarded not as a point decided by the court, but as the expression of the individual views of the judge delivering the opinion.

I do not find it necessary to express an opinion upon the question whether the right of way act should be held to give railroad companies the right to occupy highways in the country and streets in the city *lengthwise.* I only observe, that if the question were an open one, I do not believe I could consent to that construction of the act. And yet, after that construction had remained undisturbed for nearly seven years, and the legislature had not undertaken to change the law as there declared, I might, if I found it directly in the way of judgment in this case, believe it to be my duty to follow it, on the principle of *stare decisis ;* but upon the course which I would, in that event pursue, I need not, and perhaps ought not, to express any definite opinion in advance of a case actually requiring it.

But if the statute of 1853 does give to railroad companies the right to occupy streets and highways longitudinally, as that opinion holds, I fail to find any such qualification of the right as makes it dependent upon "obtaining the right of way from the *corporation* holding the fee." Page 259.

As to a highway in the country, or a street in a city, where the fee is in the adjoining owner, I am not prepared to say, that to lay a railroad down upon it, is not an additional burden for which such proprietor is entitled to compensation.

This is the doctrine of the two New York cases cited in this connection, and of subsequent decisions in the same State and elsewhere. *Wager* v. *Railroad Co.*, 25 N. Y. 526; *Ford* v. *Railroad Co.,* 14 Wis. 609.

But it is a mistake to suppose that, where the fee of the streets is in the city, in trust for the public, the

city is constitutionally and necessarily entitled to compensation the same as a private proprietor holding the fee. The legislature might provide for such compensation, but is not bound to do so. It will be observed, that the statement in the Millburn case as to the necessity of obtaining the right of way of the "corporation holding the fee," is because such corporation owns the fee, and, therefore, is entitled to compensation, and not because, by virtue of charter, powers and authority, it has the right to give or refuse its consent.

The constitutional provision is, that, "*Private* property shall not be taken for public use without just compensation to the owner." Art. 1, § 18.

The streets of the city are not the private property of the corporation in such a sense that the legislature cannot, so far as regards the corporation, authorize the same to be used for any public purpose for which it may see fit unless it makes compensation to the city for such use.

Since the decision in the Millburn case, the Court of Appeals of New York have decided this very point, in the case of the *People* v. *Kerr* (27 N. Y. 188). In that case it appeared, that the fee of the streets of New York city was vested in the corporation in trust for the public. It was held by the court, that the city held this fee in trust for the public use of all the people of the State, and not as the corporate property of the city.

The legislature authorized a street railway to be laid down upon certain streets in New York city without the consent of the city, and without providing for compensation to the city or the adjacent lot owners. The Court of Appeals, upon full consideration, decided that this might constitutionally be done, for the reason that the interest of the city in its streets was *publici juris*, and under the unqualified control of the legislature.

On this point, EMOTT, J., said : "The title (in the streets) thus vested in the city of New York, is as directly under the power and control of the legislature, for any public purposes, as any property held directly by the State, or any public body or officers, and its application cannot be challenged by a corporation (the city) which, in respect to such property, at least, is a mere agent of the sovereign power of the people." Page 199.

WRIGHT, J., said, and the court concurred therein : "I am clearly of the opinion, that the city corporation has no property in the streets of a character to be protected by the constitutional limitation on the right of eminent domain." Page 212, and see also p. 213.

The true view is this: Municipal corporations owe their origin to, and derive their powers and rights wholly *Argu.* 1. from, the legislature. It breathes into them Legislative power. the breath of life, without which they cannot exist. As it creates, so it may destroy. If it may destroy, it may abridge and control. Unless there is some constitutional limitation on the right, the legislature might, by a single act, if we can suppose it capable of so great a folly and so great a wrong, sweep from existence all of the municipal corporations in the State, and the *corporation* could not prevent it. We know of no limitation on this right so far as the corporations themselves are concerned. They are, so to phrase it, the mere *tenants at will* of the legislature.

This plenary power on the part of the legislature over public corporations, saving vested rights of property and of creditors, is a doctrine so well settled that it is unnecessary to refer to more than a few cases asserting it. *Dartmouth College*, Case 4, Wheat. 519 ; *People* v. *Morris*, 13 Wend. 325 ; *Purdy* v. *The People*, 4 Hill, 384 ; *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420 ; *People* v. *Kerr*, *supra ;* 2 Kent's Com. 305.

But while the corporation exists, and has been allowed to acquire *private* property, such property is doubtless protected by the constitutional provision the same as the private property of the citizen. The distinction is just here. A city by its constituent act may be authorized to acquire property for a market house, a public hall or the like. Of this property the city cannot be deprived by legislative act, except it be taken for public use, and if so taken, the city is entitled to compensation.

But its property in its public streets is not of this nature. The city cannot alien it nor use it for other than legitimate purposes.

Over the use of property acquired by the exercise of the right of eminent domain, or dedicated under the statutes to public use, where the soil, the fee, passes from the dedicator, the legislature, so far as regards the rights of public corporations, possesses an unlimited control.

Private citizens owning contiguous property may have rights in or to the use and enjoyment of such public property over which the power of the legislature is not boundless and supreme.

But we are required to consider only the rights of public corporations, and these rights they hold at the absolute will and pleasure of the legislature as the representative of the public.

The pertinency of these general observations will appear in the view which will be hereafter expressed respecting the immediate question before the court.

The English authorities cited by the counsel for the city, to the effect that the King cannot force a new charter upon a corporation, have no application in this country to the power of the legislature. The latter may incorporate a place without its consent; and without its consent add to, qualify, abridge, or even abolish, its municipal powers.

City of Clinton v. Cedar Rapids and Missouri River R. R. Co.

The only limitation in this State on the power of. the legislature is as to the *mode.* It must, in certain cases, act by general and not by local or special laws. Const. art. 3, § 30.

The State, by its legislature, must, in the nature of things, be deemed to have control over its highways and its means of communication. It cannot be doubted, that it is competent for the legislature to pass a law to the effect that any highway in the country, and any street in a city, may be used by any railroad company without the consent of the adjoining proprietors in the case of the highway, and without the consent of the city in the case of the street. *People* v. *Kerr, supra; Com.* v. *Erie R. R. Co.,* 27 Penn. St. 339, 354; *Moses* v. *Railroad Co.,* 21 Ill. 516. If the fee of the highway is in the adjoining owner, he may be entitled to compensation for the additional servitude to which his soil is thereby subjected. But that which gives him the right, if it exists, to compensation in such a case, is the provision of the Constitution (art. 1, § 18) protective of private property. Even in such case, it remains yet to be decided in this State whether the dedication to the public, where the fee is retained, ought not to be held to cede to the legislature, as the representative of the public, the right to regulate, as it sees fit, the public use. Upon this point it is not necessary for the court to express any definite opinion.

But where the fee of the street is in the public or in the city corporation in trust for the public—for the city holds the fee not for itself or its inhabitant alone, but for the general public, equally and as well—the legislature may authorize the street to be used by a railroad company without the consent of the city and without compensation to the city.

The reason for this has been before stated, viz., that the streets of the city are not its "private property"

*Argu. 2.*
*Streets not*
*private*
*property.*
in such a sense as to entitle it as of right, despite legislative declaration to the contrary, to compensation for this additional public use.

This point, as we have before seen, is expressly ruled in *The People* v. *Kerr*, above referred to, and of its correctness, there can, it seems, be no doubt.

And the decision in the *City of Des Moines* v. *Hall* (*ante*) is perfectly consistent with this view. There the the city, as the holder of the legal title, of the fee, brought its action against a private trespasser upon the soil of the street. Such an action can, of course, be maintained by the city, though its ownership of the soil is qualified, as respects the public, by the purposes for which it is held. But it is different where the city, a derivative and subordinate authority, sets up rights as against the legislature as the sovereign representative of the general public, for whose use the streets are dedicated.

If, then, there is a plain manifestation, in the present case, of an intention on the part of the legislature that the defendant might occupy the streets of the plaintiff without the consent of the city authorities, then the city cannot legally object to such occupation.

If it can be seen that the legislature has willed, has intended, that the defendant should have the right, it has it, and the city cannot prevent its exercise.

The legislative history of the road in question, and particularly the various provisions of section six of the act of 1860, show to our minds most satisfactorily that the legislature intended to give to the defendant all requisite power to build and operate the road.

It fixed both terminal points. One *terminus* was at the "point of intersection with the Chicago, Iowa and Nebraska railroad, *within the corporate limits of Clinton city.*" The fact in the present case is made to appear that it is utterly *impossible* to construct this road at all

without crossing, and to some extent going lengthwise upon the streets of the city. The city is laid out into blocks, and to reach the required point without passing over streets, is just as impossible (to use the illustration employed on the argument) as to draw a straight line over a chess board and not cross some of the spaces. This fact, we must presume, was known to the legislature.

Under these circumstances, when the legislature said to the defendant, "You shall build this road, and you shall build it to such *a point;* for we intend and mean hereby to secure to the citizens of Lyons the same privileges and benefits of a railroad connection that are enjoyed by the city of Clinton, or any other place on the Chicago, Iowa and Nebraska railroad,"— when the legislature said this, they intended to give, and did give, to the defendant, in connection with other existing statutes, all needful power to effectuate and carry into execution the legislative will.

And it is not competent for the city of Clinton, whose rights in, and whose power over the use of, its streets are wholly subject to legislative control, to thwart the plain purpose and anxious desire of the legislature.

In support of these views, reference is particularly made to the case of *The Inhabitants of Springfield* v. *Connecticut River R. R. Co.* (4 Cush. 63), and to the reasoning and views of Chief Justice SHAW, on pp. 70, 71, 72 and 73. The case is so pertinent, and the doctrine held so reasonable, that its enlightened justice, allowing railroads to be built when and *where* authorized by the legislature, but placing them in the exercise of their powers under the control of the Court of Chancery, cannot fail to command very general approval.

This eminent jurist says: "As no company or persons have authority to lay out a railroad, except so far as such

power is conferred by the legislature, the court are of opinion, that by the grant of power by a legislative act, to lay out a railroad between certain *termini*, where the precise course and direction are not prescribed, but are left to the corporation to be located between the *termini*, no authority is given *prima facie* to lay such railroad on and along an existing public highway longitudinally, or, in other words, to take the road bed of such highway as the track of their railroad," for "the two uses are almost, if not wholly, inconsistent with each other," etc. But the court are of opinion, that it is competent for the legislature, under the right of eminent domain, to grant such an authority. Such intention must be shown by express words or necessary implication.

There may be such necessary implication. Every grant of power is intended to be efficacious and beneficial, and to accomplish its declared object; and carries with it such incidental powers as are requisite to its exercise. If, then, the exercise of the powers granted draws after it a necessary consequence, the law contemplates and sanctions that consequence."

" In the present case, it is manifest, that there are no words in the act of 1845 which give to the defendants (the railroad company) authority to locate and construct their railroad over Front street, where it was actually laid, or over any other highway in Cabotville; and if they had the power, it must be derived from necessary implication, though no such implication appears in the face of the act. If it exists, it must arise from the application of the act to the subject-matter, so that the railroad could not, by reasonable intendment, be laid on any other line."

And the court held that, if the road chartered by the legislature, could not be built without using a street or highway, so much of such street or highway might be

JUNE TERM, 1868. 481

City of Clinton v. Cedar Rapids and Missouri River R. R. Co.

used as should be "reasonably sufficient to accommodate all the interests concerned, and to accomplish the objects for which the grant was made."

To the same effect, see *Com.* v. *Erie R. R. Co.* (27 Penn. St. 339, particularly 354–5), per BLACK, Ch. J., and *Moses* v. *Railroad Co.* (21 Ill. 516). It is readily admitted that the authorities are not uniform (see *Morris, etc., Railroad Co.* v. *Newark*, 2 Stock. Ch. 352, and other cases cited by appellee's counsel), but as applicable to the respective rights of the city and the railroad company under the act of 1860, we are quite content to express our satisfaction with and reliance upon the case of *The Inhabitants of Springfield* v. *Connecticut River R. R. Co.* (*supra*).

It appearing, from the answer, and the affidavits in support thereof, that the defendant in the case at bar had, in the selection of its route within the city of Clinton, duly respected the grades of the streets of the city, had avoided the use of those streets as far as practicable, the court are of opinion that the injunction ought to have been dissolved. In this conclusion we are unanimous.

But a portion of the court, WRIGHT and BECK, JJ., in addition to the grounds stated in the foregoing opinion,

5. —— general right of way act. would reach the same result under the general right of way act, believing that the railroad company, under that act (subject to equitable control to prevent the abuse of the power), has the right, so fas as is reasonably necessary, to use the streets of the city, without making compensation to the city corporation for the right of way, not regarding what is said in that respect in the Millburn case as one of the points *decided* by it. Mr. Justice COLE is of the same opinion except that, in his judgment, the city of Clinton has such an interest in the streets as to be entitled to compensation for any damages which such occupation may occasion to

City of Clinton v. Cedar Rapids and Missouri River R. R. Co.

them, he not regarding *The People* v. *Kerr* (*supra*), which was in relation to a street railway, as applicable to the case of an ordinary railway.

An order will be entered in this court vacating the injunction, and the cause remanded for further proceedings, if any are desired, not inconsistent with this opinion.*

Reversed.

---

*After the foregoing opinion was filed, the cause remanded, and a decree entered dismissing the plaintiff's petition, the defendant determined to change, in some respects, its line of route. Whereupon the city commenced a new suit seeking to restrain the company from the use of the streets. A temporary injunction being granted, a motion was made to dissolve, in the disposition of which the following decision was made by Chief Justice DILLON, which, on account of the great importance of the case, not only in the interests it affects, but in the principles involved, is here given to the profession, and in the form of a note, in order to save space.

REPORTER.

DILLON, Ch. J.—The city of Clinton in its corporate capacity, by its amended petition, seeks to restrain the defendant from using, for the track of its road, River and First streets, in the city of Clinton. I allowed, a few days since, a temporary injunction on the showing made by the petition; but as this order was *ex parte*, I made special provisions to enable the defendant to move at an early day the dissolution of the writ, if it desired to do so. Such a motion has been made, and a large mass of affidavits and documentary evidence has been submitted in support of and in opposition to the motion.

To understand the grounds of my present decision, it is necessay to refer to a former proceeding of a like character between the present parties.

In 1867, a prior suit was commenced by the city of Clinton to enjoin the defendant from using any of the streets of the city of Clinton for the purpose of laying down the track of its road therein. In that suit it appeared, as it appears in this, that the city council of Clinton has not only refused to give its consent to any such use of its streets, but had forbidden such use and protested against it.

The railroad company claimed the right to occupy such portions of the streets of Clinton as were reasonably necessary to enable it to build its road according to the requirement of the general assembly of the State of Iowa, by its act of March 26, 1860. By this act it was made the duty of the defendant to construct a railroad "from Pearl street, in the city of Lyons, to a point of intersection with the Chicago, Iowa and Nebraska railroad, within the corporate limits of the city of Clinton."

The answer of the railroad company in that case contained a diagram of the route which had been surveyed by it, and upon which it proposed to build its road. This route traversed a portion of River and First streets, in the city of Clinton — being the same streets upon which the de

483

City of Clinton v. Cedar Rapids and Missouri River R. R. Co.

fendant still purposes to build its road, and which have been already graded for that purpose.

In that suit the defendant moved to dissolve an injunction which had been granted, but, this motion being overruled, the railway company appealed from this order to the Supreme Court.

The question before the Supreme Court on that appeal was, whether the action of the District Court, in denying the motion to dissolve, was, or was not, erroneous.

In that case the Supreme Court decided, that the District Court erred in not dissolving the injunction, and itself entered an order dissolving the writ and remanding the cause for further proceedings in the District Court, not inconsistent with the opinion of the Supreme Court. The opinion of the Supreme Court was filed in the month of May of the present year, at the Dubuque Term. In that opinion, the legislative history of the proposed railway from Lyons city to Clinton city, and the prior adjudication of the Supreme Court on the subject of the right of railway companies to lay down their tracks in the streets of incorporated cities and towns, is fully gone into, and I do not propose to restate the various views and arguments which led the court to the conclusion which it there reached.

Two of the judges (WRIGHT and BECK, JJ.) were of opinion that the general right of way act of the legislature (Rev. p. 218) gave to all railway companies the right to occupy such portions of the public streets of an incorporated town or city as should be reasonably necessary to build its road, and this without the consent, and even against the will of the common council of the corporation, and without being obliged to make compensation to such corporation; since in their opinion the corporation did not own their streets as *private property*, but the same were *public*, and the use thereof was under the control of the legislature. Hence, it was competent for the legislature to say, as in their opinion it had done in the right of way act, that streets might be used for the purpose of laying down the track of a railroad and operating the same therein.

Mr. Justice COLE was of the same opinion respecting the authority conferred upon the railway companies by the right of way statute, except that he could not say that the municipal corporation might not be entitled to compensation for special damages suffered by it. My judgment did not rest upon the power given by the right of way statute (as to which I did not find it necessary to express any opinion), but upon the special legislation of the State in reference to this particular railway. The legislature has required this road to be built to a certain point *within the city of Clinton*, and this, I held, gave to the company (applying the act to the subject-matter) by implication the right to use such portions of the streets of that city as were reasonably necessary to execute the legislative will, it being made to appear in that case that without the use of the streets, at least to some extent, it was impossible to build the road, to secure the construction of which the legislature had made such special and stringent provisions.

As in that case, the affidavits showed, that the railroad company had adopted a line which did not materially interfere with the grade of the streets, nor run through the populous and highly improved portions of the city, but near to and along streets upon which there were comparatively few improvements, the court united in the conclusion that the city was not entitled to any injunction on the record as it was then before the

court, restraining the company from building its road on the line which it had surveyed and staked out.

In this holding, the court also expressed the opinion, that under neither the general right of way law, nor the special act applicable to this particular road, was the right of the company to use the streets of the city absolute and beyond all judicial control, but that a court of equity had the inherent power to prevent an unreasonable or oppressive use or abuse of the general power which it had to use the streets so far as might be reasonably necessary for it to do so.

After the cause was remanded to the District Court of Clinton county, it came on to be heard at the September Term, 1868, and a decree was entered *dismissing the plaintiff's petition.* That decree stands in full force.

The present is a *new suit* by the city, seeking to restrain the company from the use of the same streets.

It appears, that, after the decision of the Supreme Court, in May, the company determined to change, in some respects, the line of the route as it existed when the cause was in the Supreme Court. But it appears that these changes are, in fact, not detrimental to the city, and are advantageous to the adjoining property owners. And the counsel for the city expressly admit that they do not ask for an injunction because of these alterations in the line of the road. They contest the right of the company to use the streets at all — at least the right to use the same longitudinally, or any further than may be absolutely necessary to reach the point of intersection with the Chicago, Iowa and Nebraska railroad. In effect, they say, that if the company have, either as a result of the former adjudication or under the law, the right to go upon the line which was before the Supreme and District Courts in the former case, the city does not object to the alterations which have since been made in that line. The point now mainly made and pressed by the city is this: That First and River streets, in Clinton, are important; that the use of them by the defendant will practically destroy, so far as its track extends, their ordinary use; and that there is a practicable route for the road of the defendant without occupying these streets, which route is from 200 to 500 feet east of the present route, and nearly parallel with it.

This route, the defendant contends, is quite if not wholly impracticable, being on and along overflowed grounds, and over sloughs and bars in the Mississippi river. The plaintiff's amended petition asks that a commission be appointed by the court to examine this line, and to report to the court a reasonable and proper route upon which the defendant should be required to build its road.

The defendant, in addition to denying the feasibility of the route indicated by the plaintiff, claims that its right to build on the former line is *res judicata,* and that, inasmuch as the changes made in that line are favorable to the plaintiff, the latter is estopped in this new suit from insisting that the defendant shall build on the route which the city now proposes. In the view I take of the question now before me, I do not find it necessary to decide how far the city is estopped, if at all, by the decree of the court in the former case, dismissing the plaintiff's petition.

Upon the showing now made before me, I am of opinion, that the defendant is entitled to have the injunction dissolved upon the special circumstances of this case, viewed in the light of the principles laid down by the Supreme Court in its opinion in the former suit between the parties.

JUNE TERM, 1868. 485

City of Clinton v. Cedar Rapids and Missouri River R. R. Co.

These circumstances are the following: On the 5th of August last, after the decision of the Supreme Court, the attorney of the defendant had a special meeting of the common council of Clinton convened, and stated to them that the company, under that decision, claimed its right to lay down its track in the streets of the city, that they desired to commence work immediately, and wished to put the city to as little inconvenience as possible. He exhibited to the council a diagram or map showing the changes in the line, and where the company proposed to build its road, and he asked the city's consideration of it, and consent to it. The matter was referred to a committee, who failed to make any report until the 28th day of September, a period of nearly two months. In the meantime, supposing the city authorities not to object thereto, the company (in the latter part of August and September) graded the whole line, put in culverts, and had the road bed in a state of preparation nearly ready for the ties and iron. The iron was also procured, and is ready to be laid, or nearly so.

Of the action on the part of the company and its expenditure of money, the city authorities had full knowledge.

On the 28th of September, the committee reported against allowing the company to use any of the streets, and authorized steps to be taken to protect the rights of the city against the defendant. The injunction, if continued in force, would prevent the company from finishing its road the present season, or until it shall be ascertained on the final hearing whether there is another practicable route by which the use of these streets can, to a great extent, be avoided. If the company can be compelled to change its route to the one indicated by the city, it will lose much, if not all the work it has done on the present line — and that is, as before remarked, nearly ready to receive the ties and iron.

Why did not the city move against the railroad company as soon as it saw it expending money and labor on its present line? Why wait, and apparently acquiesce in the line the company had adopted? The only answer the counsel for the city made to this objection to their equity for an injunction was, that in law the public do not suffer by delay, and that the defendant, if its acts are not authorized, can acquire no right by the mere silence and non-action of the city.

I cannot consent to the soundness or justice of this principle to the extent claimed.

I think it was the duty of the city, under the circumstances, to have informed the company that it objected to the line it had adopted, that it objected to any occupation of its streets, and to have moved against the company promptly. I do not say that the failure will cause the city to lose *permanently* any substantial rights which may be violated by the company; but I do think that this failure operates with great force, particularly under the circumstances and the near approach of winter, against the right to a preliminary injunction.

It is perfectly clear from the affidavits, that the streets in question are not in the populous or highly improved portions of the city, that the grades are not essentially interfered with, and that no great or unusual damage or inconvenience will be occasioned by the defendant's use thereof during the pendency of this suit.

Whether the route claimed by the city to be practicable is so or not; whether or not it is one which the railroad company should, or reasonably can, be required to adopt; whether a commission should be appointed

or not to make a survey of the proposed route, and report to the court; how far, if at all, the former decision is conclusive against the city, are matters which I do not find it necessary to discuss, and which, under the circumstances, will come up more properly on the final hearing than in this preliminary manner.

As when the motion to dissolve was finally submitted this morning an early decision of it was desired, especially by the defendant, as its work was suspended by the writ, I have thus briefly indicated my views touching the plaintiff's right to an injunction — leaving the rights of the parties to be settled on the hearing.

An order will be entered vacating the injunction I heretofore granted.

JNO. F. DILLON,<br>
<em>Chief Justice Supreme Court.</em>