## REMBERT & HALE, Adm'rs, *vs.* BROWN.

1. A court of equity will interfere and open a stated account between a principal and his agent, where it is shown that the former is of a weak and confiding mind, and that undue advantage has been taken of him.
2. On a motion to dissolve an injunction the answer can be regarded, only so far as it is responsive to the bill.
3. An injunction should not be dissolved, unless the answer, in clear and explicit terms, denies the equity of the bill.
4. If an answer is evasive or uncertain, or if the case made by it does not show clearly that the complainant is not entitled to relief, the injunction should be retained until the final hearing.

Error to the Chancery Court of Dallas. Tried before the Hon. Wilie W. Mason.

THIS was a bill filed by the plaintiffs in error as administrators on the estate of William C. Wood, deceased. The facts alleged in the bill, so far as they are material to a proper understanding of the opinion of the court, are substantially these : The intestate, and his brother, Middleton G. Wood, in 1834 and up to 1839, owned jointly a large plantation in Perry county, connected with which was a blacksmith shop that yielded an annual nett profit of from a thousand to fifteen hundred dollars. The two brothers lived in Selma, about thirty miles from the plantation, and in consequence of the natural mental imbecility, and intemperate habits of William C. Wood, the plantation was left entirely to the management of Middleton G. to the time of his death, which occured in 1839. Middleton G. Wood was engaged in the mercantile business in Selma and seldom visited the plantation, but during the whole time confided its management entirely to the defendant, as the overseer and general agent of himself and brother, who collected the accounts of the blacksmith shop and sold and received payment for all the surplus corn and provisions raised on the place. After the death of Middleton G. Wood, the intestate, being entitled as his next of kin to the whole of his estate, continued the defendant as his overseer and general agent on said plantation to the time of the intestate's death, in 1841, allowing him the exclusive control and management thereof. The salary, which the defendant was to receive from the intestate and Middleton G. Wood, was at first four and afterwards six hundred dollars, and it was understood that he was to pay himself out of the profits of the blacksmith's shop and account for the balance. The defendant made one payment to Middleton G. Wood, in 1835, on account of the balance received from the blacksmith shop after the payment of his salary—two in 1836, and one in May 1837, for each of which the said Middleton G. gave him a receipt—all of which receipts were found by the complainants among the papers of their intestate, after his death. These were the only payments ever made by the said defendant. In June 1840, the intestate executed a note to the defendant for $2,221, on which the defendant has commenced suit against the

complainants. The bill alleges that during the summer of of 1840, the intestate was almost incessantly in a state of intoxication and in his soberest moments was utterly incapable of transacting any business whatever; that the intestate was not indebted to the defendant, but on the contrary the defendant was largely indebted to him; and that the said note was fraudulently obtained by the defendant from the said intestate, without consideration, and by the exercise of undue influence, &c. The prayer of the bill is for an injunction and account.

The defendant, in answering the bill, denies that the amounts so paid over were balances in his hands after retaining his wages, and denies that he has not fully accounted for every dollar that he has received, and says that he and Middleton G. Wood had regular annual settlements, &c. In reference to the four receipts and the note for $2,221, he says, "The four receipts, copies of which are attached to complainants' bill, were the only receipts which defendant ever took from said Middleton for moneys collected and paid over to him, and in their annual settlements they were never taken up by said Middleton, because the money so paid him was never included in any of their settlements. The said receipts therefore remained in defendant's possession, until after the death of said Middleton and until the 29th day of June 1840, or thereabouts, when this defendant had a settlement with the said William C. Wood, at his plantation in Perry county, where defendant overseered, and the said monies so paid over to Middleton, evidenced by said receipts, with interest due thereon, being the consideration of said note sued on in said action at law, the said William C. Wood executed to defendant said note and took up said receipts." The answer denies the charges relative to the incapacity of the intestate; and the exercise of undue influence by him, at the time the note was given.

On the coming in of the answer, the defendant moved to dissolve the injunction, which motion was granted and the injunction dissolved. This is now assigned as error.

LAPSLEY, for the plaintiffs.

GAYLE, for the defendant.

DARGAN, C. J.—Without inquiring into the particular merits of this cause at this time, as that can be better done on the final hearing, when the evidence is before the court, we will briefly examine whether the chancellor erred in dissolving the injunction.

We do not think it can be doubted but that the bill contains equity. As a general rule, if there has been an account stated between the parties, this will be a bar to discovery and relief; but if there has been mistake, omission, accident, or fraud, or undue advantage, by which the balance is incorrectly fixed or ascertained, a court of equity will not suffer it to be conclusive upon the party injured, but will allow it to be opened and re-examined.—1 Story's Eq. 523. And if the account settled is between client and attorney, or between others standing in confidential relations to each other, a court of equity will more readily interpose and open the account, and even, it is said by some authorities, upon the general allegations of errors. But when to these confidential relations are added charges of fraud and undue advantage taken of a principal, of a weak and confiding mind, no authority, we apprehend, can be found that holds the stated account a bar to equitable relief.—Story's Eq. Plead. § 801. This view of the law applied to the facts, disclosed by the bill, shows that it contains equity, and that the injunction was properly granted, restraining the further proceeding at law on the note given by William C. Wood to the defendant. We have therefore only to inquire whether the answer so far denies the equity of the bill, as to authorise the dissolution of the injunction.

It is a well settled rule, that upon a motion to dissolve an injunction, the answer can be regarded only so far as it is responsive to the allegations of the bill.—Hardy v. Summers, 10 Gill & J. 317; Morwen v. Smith, 1 Green's Ch. R. 172. The agreement set up in the answer, by which the parties stipulated to litigate their rights at law, cannot therefore be considered on this motion; for this part of the answer is in no wise responsive to the bill. Whether or not this agreement will constitute a bar to relief on the final hearing, if the complainant should show that he was otherwise entitled to it, is a question in reference to which we will express no opinion. But looking alone to the denials of the answer in reference to the consideration of the

note, we think it clear that the chancellor should have retained the injunction until the final hearing.

The alleged consideration of the note sued on appears to have been four receipts for money, executed by Middleton G. Wood to the defendant. But how those receipts could create any indebtedness from Middleton G. Wood to the defendant we cannot understand. The money paid by the defendant appears to have belonged to Middleton G. and William C. Wood, and consequently the receipts could only be evidence in favor of the defendant of the amount thus paid by him, but they could create no indebtedness from Wood to him, and could not form a valid consideration for the note. This appears to us to be the consideration relied on by the answer. At all events, we feel assured that the answer does not in clear and distinct terms set forth a valuable consideration for which the note was given, and therefore the equitable right of the complainant to enjoin the suit is not denied in such a manner as authorised the dissolution of the injunction. An injunction should not be dissolved, unless the answer in clear and explicit terms denies the equity of the bill, (Moore v. Heylton, 1 Dev. Eq. R. 429; 1 Bland, 195; Ib. 199,) and it is said that an injunction will not always be dissolved, even if the answer deny the equity of the bill, if the court can see good reason in the facts disclosed, why the injunction should be retained.—Poor v. Charlton, 3 Sumner, 75; Hollister v. Barkly, 9 N. Hamp. 230; Sherrill v. Harrell, 1 Ired. Eq. R. 194. But if the answer be evasive or uncertain, or if the case made by the answer does not clearly show that the complainant is not entitled to relief, the injunction should be retained until the final hearing. The application of this principle to the answer of the defendant shows that the court erred in dissolving the injunction, and its decretal order must therefore be reversed and the injunction here re-instated. The cause will be remanded for further proceedings.