THE SAVANNAH AND THUNDERBOLT RAILROAD COMPANY, plaintiff in error, vs. THE MAYOR AND ALDERMEN OF THE CITY OF SAVANNAH, defendant in error.

1. The State has the same right of eminent domain over the streets and squares of Savannah, dedicated to the use of the inhabitants of the city, by Act of 1760, and those since laid out upon the common, dedicated by that Act to the same use, as it has over other territory of the State, and may lay an additional servitude upon such streets and squares, by granting to a corporation the right to run a street railway, whose cars are drawn by animal power, through them, without the consent of the Mayor and Aldermen of the city.

2. The Mayor and Aldermen of the city of Savannah have no such property in the streets and squares of the city, under the Act of 1760, or any Act amendatory thereof, as entitles them to pecuniary compensation for the additional servitude, so placed upon the streets and squares by the Legislature. Nor have they the right to an injunction restraining the construction of the railway for the benefit of the residents along such streets and squares. If such residents are damaged by the construction of the railway, they will be heard by the Courts upon a proper case made.

Injunction. Eminent domain. Municipal corporation. Before Judge SCHLEY. At Chambers. February 13th, 1872.

Defendant in error filed its bill against plaintiff in error, in which it was charged that on December 11th, 1871, an Act was passed by the General Assembly of Georgia, incorporating certain persons therein mentioned, under the name of The Savannah and Thunderbolt Railroad Company, with power to lay a railroad track through the length of Abercorn street, in the city of Savannah, beginning at its junction with Bay street, and to run cars drawn by animal power on said track, within the corporate limits of said city; that under said Act, which was passed without complainant's knowledge or consent, said company claims that it has the right and legal power to lay a railroad track through the public squares of said city, between the northern and southern termini of said Abercorn street; that said company claims that said squares are parts of Abercorn street; that, at a time beyond

the memory of any person now living, and at the original laying out of the town, Reynolds square and Oglethorpe square, with the exception, perhaps, of the areas skirting the northern and southern sides, and forming parts of public streets running east and west, were dedicated to public uses, and set apart for the comfort, health and convenience of the lot holders and inhabitants of said town, and of persons seeking business or pleasure there, exclusive of the right or claim, or pretense of right in or by any person whatsoever, to traverse said squares, in or with any cars, carriage or other vehicle; that with the possible exception aforesaid, no streets were ever intended to run through said squares; that such dedication and setting apart, good and valid in the origin, have been repeatedly recognized by all the departments of government of the State, with the acquiescence of complainant, and of all previous governments or guardians of Savannah; that for many years past, and as evidence of such dedication and setting apart, all the areas of said squares, not necessary for said skirting streets, have been enclosed and kept enclosed, except for ingress and egress by persons on foot; that all these things are true of Lafayette and Calhoun squares, except in so far as there is a difference or distinction growing out of the more recent dedication and setting apart of said last mentioned squares; that defendant has notified complainant of its claims, which claims complainant charges have no authority in law, and are beyond the power of the Legislature of Georgia, or of the corporation of the city of Savannah; that defendant failing to obtain complainant's permission to lay said track and run through said squares, has threatened and still threatens so to do without the permission of complainant; that the only remedy is by writ of injunction.

On January 13th, 1872, Judge Schley ordered that defendant show cause why an injunction should not issue in accordance with the prayer of the bill, and directed that his order should operate as an injunction until cause shown. On

January 26th, 1872, defendant showed for cause why an injunction should not issue, the Act of Incorporation heretofore alluded to, and which it is unnecessary further to set forth. On February 13th, 1872, Judge Schley decided said Act of Incorporation to be unconstitutional and void, and ordered an injunction to issue in accordance with the prayer of the bill, to which decision plaintiff in error excepts, and says that the Judge erred :

1st. In deciding said Act of the Legislature to be unconstitutional and void.

2d. In deciding that the Legislature had no power to grant to said Savannah and Thunderbolt Railroad Company the right to construct their railroad through Abercorn street and the squares intersecting it.

3d. In granting the injunction as prayed for.

HARTRIDGE & CHISOLM, for plaintiff in error. Judicial notice taken of the laws of Georgia and Ordinances of the city : 1 Greenleaf Ev., sec. 6 ; Code, sec. 3762 ; 16 Ga. R. Title to streets and squares in the city, with restrictions : Act of May 1st, 1760 ; R. M. Charlton, 349 ; 33 Ga. R., 614 ; Code, sec. 4759 ; 27 N. Y., 188. Tenure of realty limited by right of eminent domain : 6 How., 532 ; Code, secs. 2195, 2196. Legislature judge of exigencies requiring exercise of right of eminent domain : Code, sec. 2197 ; 21 N. Y., 595 ; 23 Pick., 396. Eminent domain exercised through corporate bodies, on just compensation : Code, secs. 2198, 2199. Legislature may control streets and squares of a city : 34 Barb., 494 ; 27 N. Y., 188, 192 ; 17 Ga. R., 60 ; 16 Pick., 104, 105. Legislature may change one kind of public use for another : 27 N. Y.; 16 Pick., 102, 105 ; 4 Cush., 70–72 ; 17 Ga., 60, 61. Providing a channel for commerce is a public use : Code, sec. 2196. Act could be passed without the assent of the corporation : 27 N. Y., 199, 213, 214 ; 10 How., 532, 538. Power of alienation limited by the State to an Act of the Legislature : 33 Ga., 614, 615. Restrictions by a former

Legislature would be void: 1 Redf. on R., 260; 17 Ga., 59, 60. Law is the same, whether point is made by the corporation or by the people: 38 Barb., 369. Limitation on right of eminent domain is confined to exclusive rights: Code, sec. 2199. Grant only imposes additional servitude: 23 Pick., 392. Property holder takes, subject to right of eminent domain: 17 Ga., 60; 6 How., 532; 9 Ga., 524; 25 Ga., 458. No prescription lies against the State: Code, sec. 2690. Act is constitutional: 6 How., 532; 10 How., 534.

A. W. HAMMOND & SON, for defendant. The title to the streets is, *prima facie*, in owners of adjoining lots: 33 Ga. R., 601. If not in them, then in the Mayor and Aldermen of Savannah, subject to specified terms, and cannot be taken without just compensation: 13 Min. R., 315; 16 N. Y. R., 97–109; 4 Cush. R., 63; 19 N. J. R., 386; 39 N. Y., 404; Cooley's Cons. Lim., 544, 553; S. C. R. R. vs. Steiner, decided at January Term, 1871. The Act makes no provision for paying or ascertaining compensation: 1 Ga. R., 524; 3 *Idem.*, 31; 9 *Idem.*, 37. *Quantum* of damages not material. County road altered, damages to abutting owners must be paid: Code, secs. 643, 2970.

MONTGOMERY, Judge.

The only question for the consideration of the Court in this case is, has the Legislature the power to grant to a street railway the right to run through the squares intersecting Abercorn street, in Savannah, without the consent of the corporation, and without compensation to the city? The Mayor and Aldermen of Savannah hold the title to the streets, squares, lanes, etc., in trust for the "accustomed use of" the inhabitants of the city, under the Act of May 1st, 1760, and the Acts amendatory thereof: 33 Ga., 614–616. "The corporation cannot alien or grant the public property, for purposes *different from the object of its original appropriation:*" *Ibid.*, 615. And yet we will find that the corpora-

tion has diverted the squares of the city from the purposes of their original appropriation. The original purpose to which the squares were appropriated can only be found, so far as authorities at my command have enabled me to ascertain, in the second volume of the Georgia Historical Collections, pages 252–3, in a paper entitled, "A True and Historical Narrative of the Colony of Georgia, in America, by Patrick Tailfee (Telfair ?), M. D., Hugh Anderson, M. A., D. A. Douglass and others, landholders in Georgia," etc., first printed for the authors by P. Timothy, at Charleston, in the year 1741. There we find that " the plan of the town was beautifully laid out in wards, tithings and public squares, left at proper distances for markets and public buildings, the whole making an agreeable uniformity." Again : "A public mill for grinding corn was first erected at a considerable expense, in one square of the town ; but, in about three years' time, without doing the least service, it fell to the ground. In another square of the town, a second was set up, at a far greater expense, but never finished ; and is now erased and converted into a house for entertaining Indians, and other such like uses." These, then, were the uses to which the squares were put, eight years after the foundation of the town, and nineteen years before the Act of 1760. It is difficult to understand how the squares could have been used, either as markets or as mill-sites, without being traversed by vehicles of every description. And this must have been the " accustomed use," mentioned in the Act of 1760, unless the use had changed within the nineteen years preceding the Act, of which change I can find no record. When the squares were enclosed, and vehicles and horses excluded, some old ordinance of the city, not accessible to me, may show.

This brief historical retrospect shows that the original appropriation of the squares, at least, of those laid out at the foundation of the town, was not as parks, or of pleasure grounds ; and therefore, if there is any peculiar sanctity to

be attached to dedications of that character (which is not conceded), the original squares of Savannah cannot claim the benefit of it.   I, therefore, find that in point of fact the squares were dedicated precisely as were the streets.   Indeed, having been diverted without authority of the Legislature from the original purposes of the dedication, the question might be raised as to whether the Legislature might not compel, if they chose so to do, a return of the use of the same squares to those purposes—that is, to their use as thoroughfares.   The charter of the plaintiffs in error does this to the extent of the permission granted to run one class of vehicles through them.   It is not seriously questioned that as to the streets the Legislature has not the right of eminent domain in them, which ,enables it to place an additional servitude upon them.   The city of New York holds the title to the streets of that city, upon the same trusts and limitations that the city of Savannah holds the streets, squares, lanes and passages of that city, to-wit: for the use of the public, " and not as corporate property."   " And the trust of the city being *publici juris,* it is under the unqualified control of the Legislature; and any appropriation of it to public use by legislative authority is not a taking of private property, so as to require compensation to the city to render it constitutional : " The People *et al. vs.* Kerr *et al.,* 27 N. Y. R., 188.   " I cannot doubt that the power exists with the State Legislature, without the consent or license of the municipal corporations to so control the use of the public streets of the city as to authorize the construction of a railroad track therein, on which city passengers may be transported for hire : " *Ibid.,* page 214.   But it is said that the dedication of the squares to the public was a contract in which both the public and the individual lot owners along the squares have acquired vested rights.

The reply is, first, " All contracts are made subject to the right of eminent domain.   A contract is, therefore, not violated by the exercise of the right : " The West River

Bridge Company *vs.* Joseph Dix *et al.*, 6 Howard, S. C. R., 507. Especially is this true as to incorporations for public purposes: The Town of East Hartford *vs.* Hartford Bridge Company, 10 Howard, 511. "It is, therefore, clear that whatever in the nature of a contract could be considered to exist in such a case, by a grant to a town of some public privilege, there must be implied in it a condition that the power still remained, or was reserved in the Legislature to modify or discontinue the privilege in future, as the public interests might, from time to time, appear to require :" East Hartford *vs.* Hartford Bridge, 10 Howard, 536. The appropriation of property to one public use by the Legislature does not deprive it of putting an additional servitude thereon: Boston Water Power Company *vs.* Boston and Worcester Railroad Company, 23 Pick., 396–7; 1 Redfield on Railways, 260, note. Secondly, the Mayor and Aldermen of Savannah "cannot get an injunction to restrain the running of a railroad on the ground of injury to lot-owners along the line :" The People *vs.* Law, 34 Barb., 508. Again : "The laying of a railway upon the surface of a street, so that, except at the instant of the passing of a train, vehicles and horsemen and footmen may pass freely in and across the street," "does not materially interrupt the ordinary use of the street through which it is allowed to pass." "In that case the street remains, is open, free; in that case a new use is made of the street, without abridging its ancient use :" The Savannah, Albany and Gulf Railroad Company *vs.* Shields, 33 Ga., 616; Hamilton *vs.* The New York and Harlem Railroad Company, 9 Paige's Ch. R., 170. So that the *trust* interest, held by the Mayor and Aldermen of Savannah, is not damaged ; and for injury to *private* interests, if there be any, the persons injured are the proper parties to complain.

Conceding, however, that the squares were originally dedicated as parks or pleasure grounds, rather than as " markets overt," as was then, and is, perhaps, now, the custom in many parts of England, where " fairs and markets" are held, still,

the power of the Legislature to lay the additional servitude is indisputable. The case of Wellington *et al.*, petitioners, was an application for a *mandamus* to compel county commissioners to lay out a highway through a public park, set aside as such by Act of the Legislature, with privilege only to foot passengers to pass through. The Court refused the *mandamus*, on the ground that the Act had taken away the power from the commissioners, but says, " this decision does not involve the sovereign right of eminent domain, or affect the power of the Legislature to appropriate this property to other public uses, as public exigences may arise :" 16 Pick., 105. Again, on page 104, the Court says, " considering the power of the Legislature (to appropriate the park to other public uses) undeniable, the question is, whether the Act (setting aside the property as a park) by its terms and provisions, does supersede the power of the commissioners to lay out a highway over this common," etc. Once more, on page 103 : " It is manifest that, in cases of rare occurrence, as that of a railroad or other similar work, if property, could not be appropriated to public use by the Legislature, it could not be done at all, because there is no provision by law for its being done in any other way. The right of the sovereign power of the State is incontestible. No other provision being made for its exercise, it is, therefore, necessarily vested in the Legislature. Such is the present case, that of a public park, promenade and place for military parade." See, also, 17 Georgia, 60 and 61. Our judgment, therefore, is :

1. The State has the same right of eminent domain over the streets and squares of Savannah, dedicated to the use of the inhabitants of the city, by Act of 1760, and those since laid out upon the common, dedicated by that Act to the same use, as it has over other territory of the State, and may lay an additional servitude upon such streets and squares by granting to a corporation the right to run a street railway, whose cars are drawn by animal power through them, without the consent of the Mayor and Aldermen of the city.

2. The Mayor and Aldermen of the city of Savannah have no such property in the streets and squares of the city, under the Act of 1760, or any Act amendatory thereof, as entitles them to pecuniary compensation for the additional servitude, so placed upon the streets and squares by the Legislature. Nor have they the right to an injunction restraining the construction of the railway for the benefit of the residents along such streets and squares. If such residents are damaged by the construction of the railway, they will be heard by the Courts, upon a proper case made.

3. The Act of December 11th, 1871, authorizes the Savannah and Thunderbolt Company to run their railway through the squares, intersecting Abercorn street.

Judgment reversed.