EDWIN M. RANDALL ET AL., APPELLANTS, VS. JACKSONVILLE STREET RAILROAD COMPANY, APPELLEE.

1. Where an appeal is obtained and entered within thirty days before the first day of the next term of this court it is returnable to, and should be docketed on such day, in such next term, as will admit of twenty days' notice of such appeal being given, and the transcript of the record of the decree must be filed on such day or the appeal may be dismissed as provided by Section 4 of the act of February 10, 1832. Twenty days' notice of appeal is the time required in such cases. When docketed the case stands on the calendar for hearing as other cases. Sections 3 and 4 of the act of February 10, 1832, regulating appeals to the Supreme Court, construed.

2. A horse railway over a street in a city, constructed under legislative authority and with consent of the municipal corporation, is not a nuisance if it be " laid down in the most approved mode of con-

structing street railways ;'' nor is a horse railway so constructed and so laid down such an additional burden upon the soil of the street as to entitle abutting land owners to compensation, or to have such railway enjoined or abated.

Appeal from the Circuit Court for Duval county.

Judge Walker, of the Second Circuit, sat in the place of the Chief-Justice, who was disqualified by being a party complainant.

At the June Term, 1881, the appellants, on the 15th day of the term, move to docket the case.

The facts of the case are stated in the opinion.

*Cockrell & Walker* for the motion.

*Fleming & Daniel contra.*

We maintain that if the appeal be applied for in vacation at least twenty-five days' notice of such appeal shall be given to the appellees before the first day of the term of the court at which said appeal is to be tried.

The mode of prosecuting appeals is regulated by the act of February 10th, 1832. Duval's Compilation, pages 108, &c.

The third section of this act, after stating " that if the said appeal be applied for in term time, the application shall be made in open court, and it shall be so stated by the clerk upon the record, and the appeal bond shall be approved by the Judge," recites, " but if the appeal be applied for in vacation the said appeal bond shall be approved by the Clerk, *and at least twenty-five days' notice of such appeal shall be given to the appellee before the first day of the term of said Court of Appeals at which said appeal is to be tried.* The language here is clear and can admit of but one construction, unless modified, as claimed, by the provisions of the next succeeding section. Unless so modified there can be no doubt that where the appeal is taken in vacation at

least twenty-five days' notice must be given to the appellee before the first day of the term at which the appeal is to be tried."

We insist that the fourth section of said act does not conflict with or modify in any manner the provisions of the third section, but that the office of the two sections is entirely distinct, and so intended by the framers of the law.

The latter clause of the third section which we have quoted, in positive terms prescribes the notice (where the appeal is taken in vacation) which must be given before the first day of the *term at which it is to be tried*.

In the fourth section there is nowhere to be found any reference to the term at which the appeal is to be *tried*. This section (4), as is indicated by the marginal notes of the compiler, relates to the filing of the record ; prescribes when such record must be filed, the notice of such filing, the right of the adverse party to move that the appeal be dismissed, if the appellant fail to file the record and the proceedings thereon.

By no reasonable implication can this section be construed to affect or in any wise alter the clear and explicit language of the preceding section wherein it is provided that the appellant shall have twenty-five days' notice before the first day of the term at which it is proposed to try the appeal.

It is made "the duty of the party appellant to file a copy of all the proceedings with the Clerk of the Court of Appeals on or before the first day of the next succeeding term thereof, unless the said succeeding term shall commence within thirty days after the obtaining of such appeal, and then the said appeal shall be entered as soon after the first day of the next succeeding term thereafter of said Court of Appeals as will admit of twenty days' notice thereof being given."

The entry of the appeal here evidently refers to filing the record and entering the cause upon the docket of the Supreme Court.

If thirty days intervened between the date when the appeal is obtained and the first day of the term the record must be filed on or before this first day.

This gives time for the twenty-five days' notice to the appellee to prepare for trial. If thirty days do not intervene then the appellant is permitted to enter his appeal, *i. e.*, file the record and enter the cause to be docketed in the Appellate Court as soon after the first day of the next succeeding term thereafter " of said Court of Appeals as will admit of twenty days' notice thereof being given." This further time is given to enable the party appealing to bring up the record even though there be not time to give notice of a hearing of the cause, provided twenty days intervene between the obtaining of the appeal and the day in the term on which it is proposed to file the papers.

The twenty days' notice mentioned in the fourth section is not a notice of trial, but is to enable the appellee to see that the record is properly made up and filed in the Appellate Court, and to move to dismiss the appeal if the appellant fails to file the proceedings as required by the statute.

In other words, to provide against dilatory motions at the term at which the appeal is to be tried.

Where the appeal is taken in vacation too late for the notice prescribed in the preceding section to bring the appellee to a trial at the next succeeding term, the appellant must serve a notice of the filing of the record in order that the appellee may at the expiration of twenty days from the service of such notice appear before the court, and if the record be not made up and filed in conformity to law, and so as to admit of the trial of the appeal at the next term, move to dismiss, and thus force the party appealing either to perfect the record or abandon his appeal.

The fourth section thus construed operates to protect parties from mere dilatory appeals, and at the same time tends to facilitate the business of the court by giving an opportunity, when an appeal is taken too late to be heard at the term, for the parties to settle all preliminary questions arising out of the character of the record and prepare the cause to be tried at the next succeeding term.

The fourth section provides for the making up of the issue when the appeal is taken too late to give notice for trial.

The third section prescribes how the appeal is to be taken, and when taken in vacation what notice shall be given to the appellee before the term of the court at which the appeal is to be tried.

MR. JUSTICE WESTCOTT delivered the opinion of the court on the motion.

On the fifteenth day of the term this motion is made to docket the case for hearing at this term. It is an appeal from an order of May 2, A. D. 1881, dissolving an injunction before that time granted in the cause, the appeal being applied for and entered on the 6th day of June, A. D. 1881. Notice of appeal was accepted on that day. This term commenced on the 14th day of June, and the appeal was " to the Supreme Court of Florida, to the 27th day of June, A. D. 1881, a day in term," of the next ensuing term of the said Supreme Court.

The appeal here was applied for in vacation.

This motion involves and requires the construction of the third and fourth sections of the act of February 10, 1832, which regulate the mode of prosecuting appeals in chancery. Duval's Compilation, 108, 109 ; Thomp. Dig., 146, 448.

So much of the third section of the act referred to as ap-

plies to this appeal taken in vacation is in this language:
Section 3. "If the appeal be applied for in vacation the
appeal bond shall be approved by the Clerk, and at least
twenty-five days' notice of such appeal shall be given to the
appellee before the first day of the term of said Supreme
Court at which said appeal is to be tried."

Section 4. "That it shall be the duty of the party appel-
lant to demand from the Clerk a true copy of all proceed-
ings in such cause in the Circuit Court, and to file said
copy with the Clerk of the Supreme Court on or before the
first day of the next succeeding term thereof, unless the
said succeeding term shall commence within thirty days
after the obtaining of such appeal, and then the said appeal
shall be entered as soon after the first day of the next suc-
ceeding term thereafter of said Supreme Court as will ad-
mit of twenty days' notice thereof being given. If the
party appellant fail to file the proceedings as aforesaid, it
shall be the duty of the said court, unless good cause be
shown, to dismiss said appeal on the adverse party produc-
ing a certificate from the Clerk of the court below that an
appeal has been obtained and a bond given." The re-
mainder of the section regulates the proceeding in the Cir-
cuit Court upon the receipt of the order dismissing the
appeal, and it is unnecessary to insert it here.

It is clear that the 4th section of this act contemplates
two different days or periods in a term of this court upon
which the the transcript of the record of a decree in
chancery from which an appeal has been taken shall be
filed. One of these days is the first day of the term. It
is also clear that this requirement (filing upon the first day
of the term) applies to all cases except those where thirty
days does not intervene between the obtaining of the ap-
peal and the "commencement" or the first day of the next
succeeding term of this court, and as to these the "appeal

JUNE TERM, 1882. 415

Randall et al. v. Jacksonville Street R. R. Co.—Opinion of Court.

shall be entered " as soon *after the first day* of the next term as will admit of twenty days' notice thereof being given. From this it is evident that the words "appeal shall be entered " embrace in their meaning the filing of the record, to which matter the first sentence of the section principally refers, because, without such construction, the time of the filing of a record *after the first day of the term* in appeals taken within thirty days before its commencement would not be provided for, while from the very words of the statute one of its purposes was to designate such day. Now, what is the day fixed for the filing of the record in such case? We think from the language of the statute it is a day after the first day of the term which will admit of twenty days' notice of the obtaining of the appeal. The term " thereafter " refers to the terms " obtaining of such appeal," and the notice to be given is clearly twenty days' notice of obtaining the appeal. The necessary result is that in cases where the term of this court commences within thirty days after an appeal is obtained, the notice of appeal to be given is twenty days instead of twenty-five, as required by section three, and that the day for the filing of the record as fixed by this section is the twentieth day after the obtaining of the appeal. The terms " appeal shall be entered," therefore, embrace both the filing of the transcript of the record and the docketing of the appeal in this court.

If the first sentence of this section (3) stood alone, we think the construction we give could not be shown to be incorrect; but when we examine the second sentence, construe it with reference to the first sentence and the general purpose of the Legislature in the enactment of the whole section, there can be no doubt that the appeal in the thirty-day cases must be docketed on such day as will admit of twenty days' notice of the appeal having been obtained,

such notice having been given ; and this because the last
sentence expressly provides that if the appellant fail to file
the proceedings or transcript of the record, as required in
the first sentence, then, unless good cause be shown, the
appeal shall be dismissed.   What appeal shall be dismissed ?
Plainly and necessarily the appeals referred to in the first
sentence, and they embrace first appeals taken within thirty
days of the commencement of the term, and next those not
thus taken ; in other words, all appeals.   Again, what is
the general purpose of this section (3) ?   It is to secure and
enforce diligence, and to punish neglect, laches or delay by
dismissing the appeal.   4  Fla., 399 ; *vigilantibus, non-dor-
mientibus jura subveniunt.*   In this case the law required it
to be docketed at this term, and if it was not so docketed
the appeal might have been dismissed ; and if docketed it
must be docketed for all purposes—as well for hearing as
for dismissal or other disposition.   It certainly cannot be
seriously contended, in view of our statutes and practice,
that there is in this court an appearance and trial term.
This section prescribing the time of notice of appeal and
the time of docketing the appeal, and there being no other
provision controlling the time for hearing the thirty-day
cases, they necessarily stand for hearing on the calendar as
other cases in which the transcripts of the records are filed
on the first day of the term, and in which twenty-five days'
notice of appeal is required.

Sections 3 and 4, which we have thus construed, are sec-
tions in the same act covering subject matter of like char-
acter, and must, if it can be reasonably done, be construed
so as to give operation to each.   The result is that Section 3
controls all cases not embraced in the exception created by
Section 4 of the statute—the thirty-day cases—and as to
them they are controlled by section four as construed in
this opinion.

Motion granted.

JUNE TERM, 1882. 417

Randall et al. v. Jacksonville Street R. R. Co.—Argument of Counsel.

The case was docketed and continued to the January Term, 1882, when it was heard upon the merits.

The facts are stated in the opinion.

*Cockrell & Walker* for *Appellants.*

If a reasonable doubt exists in the mind of the court as to whether the equity of the bill has been answered, the injunction will not be dissolved but will be continued to the hearing. New Edition, Sec. 1470; High on Injunctions, 518.

If the case made by the answer does not show clearly that the complainant is not entitled to relief the injunction should be retained until the final hearing. 17 Ala., 667.

Where it is apparent from the answer that there are still questions of doubt, on which additional light is requisite to satisfy the court, before deciding the rights of parties, a dissolution should not be granted. High on Injunctions, 529–30; New Edition, Sec. 1510.

Only those allegations in the answer which are responsive to the allegations of the bill can be considered on motion to dissolve. High on Injunctions, 826; New Edition, Secs. 1472, 1471, 1505.

If the laying of this railway is authorized by law, the inconvenience, whatever it is, must be submitted to; but if the railway was placed there without authority of law, the authors of the act cannot defend themselves against the charge of nuisance. 14 New York, 524–5.

Now how far is the denial of the answer an explicit and direct traverse of the allegations of fact on which the writ is granted? High on Injunctions, 903. It is not sufficient that it denies the inferences to be drawn from those facts or deny their effect and such an answer is not sufficient to dissolve the injunction.

The fact that the rails were laid on Sunday is alleged in

27

the bill and not denied in the answer. It is, therefore, for the purpose of this hearing, conceded.

That the rail so laid on Hogan street is a T rail and not a U rail, is admitted.

The bill alleges that the right to place this railway is derived from the city, by virtue of the resolutions, a printed copy of which is attached to the original bill. The answer admits they rely upon these resolutions, but insists that they are aided by the powers conferred upon them. as organized under the general laws of incorporation. This statement of the answer in no wise contravenes the allegations of the bill, inasmuch as the bill expressly avers the defendant corporation was organized under the General Incorporation Laws.

The bill alleges that complainants own the lot occupied by them as a residence extending along Hogan street and on account of such ownership, own, as abutting proprietors, to the centre of the street. The answer concedes the proprietorship of the lot adjacent to Hogan street, but denies the legal conclusion that they own to the centre of the street, and assert that under the facts set up in the answer the fee is in Hart, or his heirs, who laid out the street and sold the lots. Hence the question raised by the pleadings is an issue of *law*, not of fact, and was fully disposed of on the original hearing. 23 New York, 61.

The bill alleges that in consequence of the proximity of the street, upon which this nuisance is laid, to the dwelling of complainants, a special injury is put upon the complainants. The answer, when critically analyzed, simply avers that the injury complainants sustained is none other than such as the owners of other lots, on Hogan street, similarly situated, have sustained.

The bill alleges that the complainants, by virtue of this proprietorship of the adjacent lots, own to the centre of the

street, subject only to the original easement to which it was dedicated, and that in laying the railway the defendants have subverted the soil and displaced it and put obstructions in the street; that this constitutes a trespass upon them for which no adequate pecuniary compensation can be had in damages; that the trespass is a continuing one and entitles them to an injunction as the only complete remedy. The answer admits the facts charged, but denies that the ownership of the complainants extends to the centre of the street and insists that the injury sustained is only such as is unavoidable from the construction of the railway, and is common to all parties similarly situated.

The grantee of a lot bounded on a street *prima facie* takes to the centre. Under the facts disclosed in the answer, the law infers that Hart, from whom complainants, by mesne conveyances claim, intended to sell and convey the fee to the centre of the street. Pierce on R., p. 239; 23 New York, 61; 63 New York, 246; 1 Wendell, 270; 14 Wisconsin, 616. The authority claimed is a grant of a franchise. 3 Kent, 458; 2 Black, 37; 6 Johns' Chancery, 439. The grant in this case being against common right construed strictly. 23 New Jersey Eq., 456. The grant in this case is void. 10 Wallace; 52 Milhau vs. S Sharp, 27 New York, 611. A railroad track laid without authority of law is a nuisance. 14 New York, 524–5.

Being a nuisance laid upon the property of complainants it is in the nature of a continuing trespass upon complainants' property and entitles them to the only adequate remedy of injunction. 27 New York, 611, Rosekrans' Opinion; High on In., Sec. 578. " When the fee of the streets remains in the abutting land owners the corporation may grant the right to a railway company to lay its track along or across any street; but the company avails itself of this privilege at its peril," is the rule laid down in J. B. & W.

R. R. Co. vs. Hartley, 67 Ill., 438 ; 16 N. Y., 97 ; 26 Wis., 624 ; 22 Conn., 83 ; 41 Cal., 256 ; 7 Porter, (in Indiana) 39 ; 17 Minn., 215 ; 18 Minn., 260; The Ind., Bloomington & Western Railroad Co. vs. Wm. Hardey et al., 67 Ill. ; 67 Ill., 439. The motive power employed can on principle make no difference. Cooley's Const. Lim., 547–8; Dillon's Municipal Corporations, Sec. 556 : 62 N. Y., 388.

It is *only* when the title to the fee is vested in the public that the Legislature is authorized to grant the use of the street to a railway without compensation and without the consent of the city. 24 Iowa, 455 ; 50 N. Y., 206 ; 27 N. Y., 209 ; 45 Ga., 602, cites with approval the New York cases. In the language of Judge Emott, 27 N. Y., 199, the City of New York holding the fee of the streets, " the whole people have the same right to the highway uses of such a public street, as the inhabitants of the city or the owners of the adjacent lands ;" and hence the title thus vested in the city is in the control of the Legislature.

The application as a public highway for the purpose of constructing a railroad has long claimed the attention of the courts, and the doctrine was advanced in some of the earlier cases that the application of a highway to railway uses was merely a new mode of enjoying the easement previously acquired by the public ; and that the owner of the fee was entitled to no additional compensation by reason of such railway being laid upon the highway, either across or along its route. See Plant vs. Long Island Railway Co., 10 Barbour, 26 ; Williams vs. Central Railroad Co., 18 Barbour, 222 ; 8 Dana, (Ky.) 289; 6 Whart., (Penn.) 25.

This doctrine is no longer regarded as tenable, and it is very generally held in this country that the location of a road upon a public highway is the imposition of a new servitude upon the land, in addition to and distinct from that to which it was originally subjected, when taken for

a highway, and the owner of the fee is entitled to compensation for the damage caused thereby. Williams vs. New York R. R. Co., 16 New York, 97; Imlay vs. Union Branch Railroad Co., 26 Conn., 249; Williams vs. Nat. Bridge Plank Road Co., 21 Mo., 580; Springfield vs. Conn. Railroad Co., 4 Cush., 63; Ford vs. Chicago No. R. R. Co., 14 Wis., 609; 49 Maine, 119; 48 Vermont, 107; Henderson et al. vs. New York C. Railroad Co., 78 N. Y., 423; 67 Ill., 439; 62 N. Y., 388.

The Legislature has no power to make such imposition, and the railway can derive no title by any act of the Legislature or of any municipal authority without the consent of the owner, or without appraisal and payment of damages in the mode prescribed by law. 25 Wendell, 462; 62 New York, 386. So, in England, the residuum of the owner's estate in lands used for a highway is a proper subject of pecuniary damages where the same land is used for a railroad. 1 Exch., 723.

Nothing but express legislative authority, exerted under the power of eminent domain after compensation, can interfere with the enjoyment of a public highway; and a railway laid out, over and along a highway without such authority is a nuisance. Commonwealth vs. Old Colony R. R. Co., 14 Gray, 93; 4 Cush., 71–2.

No distinction exists between the use of street railways by steam or horse power, and compensation of the owner is required alike in both cases. Craig vs. Rochester City R. R. Co., 39 N. Y., 404; 62 N. Y., 386; Wagner vs. Troy R. R. Co., 25 N. Y., 526; 21 Mo., 580.

The distinction sought to be maintained in some of the States is without reason. Cooley's Const. Limitations, pp. 680–684 and note, 4th Edition; Marginal pages 544–548.

The claim of the respondents that under and by virtue of the General Incorporation Law for Railroads and Canals,

422                    SUPREME COURT.

Randall et al. v. Jacksonville Street R. R. Co.—Argument of Counsel.

(Chap. 1987,) they have the right to lay their track longitudinally along the streets of Jacksonville independent of the municipal grant cannot be sustained. Section 5, to which the claim is sought to be traced, authorizes the construction of their road " along or upon any stream of water, water course, street, highway or canal which the route of its road or canal shall intersect." 4 Cush., 71–2. Now, considered apart from the municipal charter, it is demonstrable on the plainest principles. Section 5 of the general law does not confer upon the respondents to lay the track of its road " longitudinally for a considerable distance upon the streets of the city." Pierce on Railroads, p. 155. Here the entire length and breadth of the respondents' claim is to construct their road exclusively upon the streets of the city.

It cannot be urged that the franchise conferred by Chapter 1987 has a wider scope than is plainly expressed in the grant. The word " route" clearly confines the appropriation of streets and highways to such as lie between the termini, initial and final, of the road. 8 C. E. Greene, 23 New Jersey, 522 ; Cooley's Constitutional Limitations, p. 682, et seq. and note.

The ordinance or resolution of the city is void, because it in terms excepts from taxation the property of the Street Railroad Company.

The Constitution provides, Sec. 1, Art. 12, for a uniform and equal rate of taxation ; Section 6, that counties and incorporated towns shall impose taxation upon the principle established for State taxation ; Section 24, Article 10, declares all corporations, unless for charitable or religious purposes, shall be subject to taxation. The franchise claimed embodies exemption from taxation. This exemption is a part of a single scheme. In determining whether the city had the authority to grant the privileges claimed

the provisions of the ordinance must be regarded as indivisible. These parts being a single scheme are incapable of separation. The whole scheme is valid or no part of it. The whole ordinance when accepted becomes a contract; if constitutionally valid it is a contract binding in all its provisions. 27 New York, 619.

It is no answer to this argument to say the defendant corporation proposes *not* to claim exemption from taxation.

The validity of a charter conferring a franchise is determined by the powers and privileges *contained* in the grant, *not* by the powers exercised thereunder.

If it be conceded that it is within the power of a corporation regulating its streets to grant a license to a Street Railway Company to construct and operate its road for hire as laid down in Haback vs. The Milwaukee City R. R. Co., 27 Wisconsin, 194, S. C., 9 Am. Rep., 461, that concession does not avail the appellees. If the power in the City Council to make the grant be referred to the right to regulate the streets, the Street Railway Company cannot lawfully exercise the grant without observing its limitations.

The City Council in this case, on that concession, had the right, and it was their duty, to protect the adjacent proprietors against such change of " the mode and adaptation of the street to new vehicles and method of carriage and transportation as will materially impair or destroy such right;" that is, the right to the original use and appropriation of the streets, " unless by the consent of the owners or upon due compensation."

One of the means adopted by the council to secure this protection was to exact of the Street Railway Company that the T rail should *not* be used on certain streets.

This company confessedly and offensively disregarded this limitation in the grant, and have laid the T rail. The

SUPREME COURT.

use of this rail materially interferes with the ordinary enjoyment of the street, and the affidavits submitted at the hearing by the appellant vindicate the propriety of this restriction.

But whether this restriction in the grant was wise or unwise, the theory upon which the appellees insist upon the power of the corporation to grant the franchise remits to their exclusive judgment the condition and restrictions upon which the power shall be exercised.

In Geiger vs. Filor, 8 Fla., 325, the court refused an injunction to restrain the building of a railroad and a wharf at the end of a street.

Complainants were the owners of lots abutting on the street not reaching to the water. The case affirmed the doctrine that the abutting owners have a proprietary interest to the centre of the street, subject to the easement of the public. As to the wharf, the decision goes to this: The dedication by the original proprietor is that of the easement to the public, subject to the proprietary rights of the original proprietor and his grantees ; that the dedication of the easement to the public gave the city power over the streets as such, to be exercised in the way of improving and rendering them useful to the public, and that the erection of a wharf at the end of the street was but carrying out the object of the dedication, the making of the end of the street useful as a means of access for commercial purposes to and from the water and the shore. It was an improvement of the street itself to that end, for commercial purposes, giving the builders of the wharf a franchise to reimburse them for their outlay by wharfage, &c., *in extending these facilities into and over the water, beyond the shore.*

The grant by the Legislature of the submerged land to adjacent proprietors was construed to be a grant to the city of the end of the street under water *by virtue of its easement,*

a right, in its nature possessory and exclusive, to extend the street to the channel by means of wharves, subject, however, to the absolute property of the adjacent owner to whom the possession would revert if the street was discontinued. This is the gist of the decision, so far as the wharf is concerned. Some of its reasoning is peculiar, but there it is. That an injunction should be refused to complainants, as to the wharf, was perhaps proper. That indeed seemed to be the whole meat of the controversy.

There is no discussion of the question of the appropriation of a portion of the street in front of complainants' property to the exclusive use of a private person or corporation. The remark at the outset of the opinion, that " railroads in cities cannot be termed nuisances," argues nothing and proves nothing. The Judge says " a road of this kind presents but a smoother surface," thus in fact improving the street and making it an improvement to property. That is not the kind of railroad we are dealing with, but on the contrary we complain that this road takes exclusive possession of a part of one side of the street, destroying it as a carriage way, is of extraordinary construction and damages our property not by improving and facilitating travel and intercourse but by obstructing them. And this in the face of their grant from the city as to the mode of construction, and thus denying the right of the city to control the use of the streets.

Fleming & Daniel for Appellee.

WALKER, Circuit Judge, delivered the opinion of the court:

The record shows that plaintiffs, by virtue of a deed to them dated March 13, 1871, made by R. P. Canova and wife, are seised in fee of a lot in the city of Jacksonville, known as lot number nine, in square number thirty-eight,

which is bounded on the west by Hogan street. Plaintiffs claim in their bill that by virtue of this seisin of said lot they are seised also in fee of the land in front of their lot to the centre of said street, subject to the easement to which it was dedicated. Plaintiffs allege that defendants have built a street railway along said part of said street so owned by them in violation of their rights and interests, and pray that said railway track may be abated as a public nuisance.

The bill with its exhibits was filed in the Circuit Court for Duval county on 21st January, 1881, and on the next day a temporary injunction was granted as prayed for.

On the coming in of the answer with affidavits on both sides the temporary injunction was dissolved.

Plaintiffs then appealed to this court.

The question for our consideration is whether the Circuit Court on the facts of the bill, answer, exhibits and affidavits in the record, did or did not err in dissolving the temporary injunction restraining defendants from using their street railway, which, as appears from the answer, was completed before said temporary injunction was granted.

The Supreme Court of Florida in the case of Thebaut and Glazier vs. Canova et als., 11 Fla., 170, say : "Courts with great reluctance interfere with the free use and enjoyment of property by its owner as his taste or inclination may direct, and it is only in a case where it is clearly made out that this use and enjoyment is prejudicial and injurious to the rights of others that it will lend its aid to restrain this free enjoyment. They should ponder long and consider well where their aid is invoked for this purpose, and especially should this be so, where the thing to be stopped, while it is highly beneficial to one party, may very possibly be prejudicial to none."

If the facts in this case showed that the using of this

railway by defendants, until the final hearing of the case, would be attended with extreme probability of irreparable injury to the property of plaintiffs, or that it would endanger their lives or health, or prove a material injury to the comfort of their existence, this court would be of opinion that the temporary injunction should have been continued till the final hearing. See 11 Fla., 173.

But the facts in the record do not show that the using of the road by defendants till final hearing would necessarily be followed by any one of these results.

The bill *alleges* that these results would follow, but the answer emphatically *denies* it. The answer denies every material allegation of the bill except the allegation that plaintiffs own lot number nine, and that is bounded on the west by Hogan street, and the allegation that defendants have laid their track on a part of said street that lies between plaintiffs' said lot and the centre of said Hogan street, and they have so laid it with T rail.

Defendants in their answer deny that plaintiffs are seised in fee of the land between their lot and the centre of said street. On the contrary, they aver that the fee to said land is in the heirs of I. D. Hart, who, as they allege, nearly a half century since bought the land on which Jacksonville is situated from the heirs of Hogan, the original grantee from the Spanish government, and laid the same off into lots with intervening streets, which streets he then and there dedicated to the public use.

Defendants deny that they have taken *exclusive* possession of that part of the street on which their track is laid, and aver that their track is so laid as to leave ample space on both sides of the road for the passage of persons, animals and vehicles, and presents no obstruction to the free and customary use of said street for all the purposes of ordinary travel. They positively deny that the soil has been re-

moved; or the track laid in close proximity to the residence of plaintiffs, or that any special inconvenience or damage has accrued to plaintiffs thereby.

Defendants deny that their road is a nuisance, or that it renders plaintiffs' residence less valuable, or that it works a continuing injury, or any injury whatever, to the plaintiffs' property as a residence. On the contrary, defendants aver that their road *increases* the value of complainants' property, and that the *comfort* and *convenience* of said premises will be *enhanced* by the proximity of said street railway, as it gives the privilege of using the same for the purposes of easy communication and cheap and comfortable access to all parts of the city and its environs.

Thus we see that the statements in the bill and answer as to whether this street railway is or is not a nuisance are very contradictory and unsatisfactory, and the statements of the affidavits are equally so.

A street horse railway is not *per se* a nuisance. In the case of Geiger *et al.* vs. Filor, in the Supreme Court of Florida, 8 Fla., 332, Baltzell C. J. in delivering the opinion of that court said: "Railroads in cities and towns cannot with propriety be called nuisances. They are decided not to be such in numerous cases, both by English and American courts."

The Supreme Court of the United States, at October Term, 1876, in the case of Barney vs. The City of Keokuk *et al.*, ruled that the right to place railway tracks in the streets of towns without the consent of the adjacent proprietor, and without compensation, exists even though the fee of the street is in the adjacent proprietor, and that "there is no substantial difference between streets in which the legal title is in private individuals and those in which it is in the public as to the rights of the public therein."

During the present year of 1882 the Supreme Court of

JUNE TERM, 1882. 429

Randall et al. v. Jacksonville Street R. R. Co.—Opinion of Court.

Indiana, in the case of Eichel vs. Evansville Street Railway Company, decided that " the doctrine that the public takes only an easement in the streets of a city, and that if a Steam Railroad Company lays its tracks upon the street the owner of the fee is entitled to damages, *does not apply to horse railroads*." Citing 2 Dill. Munic. Corp., Sec. 722; Cooley Const. Lim., 526; 32 Conn., 579; 14 Ohio State, 523; 27 Wis., 194; s. c. 9 Am. R., 461; 125 Mass., 515.

The charter of the defendant company gives them power to construct, equip and operate, " with steam, horse or other power, one or more lines of street railway in the county of Duval, in the State of Florida, within the corporate limits of the cities of Jacksonville and LaVilla and their ' vicinage,' said railroad to be first laid down Bay street from Bridge street to Market street, thence up Market street to Duval, thence along Duval street to *Hogan* street, thence down *Hogan* street to Bay street," and the *municipal corporation* bestows upon said company the power to construct a street railway along Hogan street.

Thus we see that this street railway was constructed over Hogan street under legislative authority and with the consent of the municipal corporation.

It is pretty well settled that the construction of street railways in cities, in the absence of any express statute upon the subject, is not such an additional burden upon the soil of the streets as to entitle adjoining land owners to compensation when the legislative authority for such construction and the consent of the municipal corporation as to the particular location have been obtained. 1 Amer. Law Reg. (N. S.), 193, and the American Law Review for June, 1881; The People, &c., vs. Kerr *et al.*, 27 N. Y., 188; Hinchman *et al.* vs. The Paterson Horse R. R. Co., 17 N. J. Eq., 75, (1864); Hobart vs. Milwaukee City R. R. Co., 27 Wis., 194, (1870); Attorney-General vs. Metropolitan R. R. Co., 125 Mass., 515.

The objection that this railroad company is allowed to collect tolls from those using its road is not a good one.

In the case of Brown & Co. *et al.* vs. Duplessis and The City of New Orleans, 14 La., 842, Judge Cole in delivering his opinion held that such consent (of the owner of the abutting lots) was not necessary, and held that if the City of New Orleans wished to expend the money necessary for the laying of rails throughout the city for the purpose of permitting all who wished to run their cars thereupon, drawn by horses or mules, no one could complain as long as it did not prevent other modes of traveling in the streets ; for traveling in cars on rails was one mode of using the public streets, and there was no reason why it should be lawful to travel in a carriage upon the streets and not lawful to travel in a car on rails fixed in the streets, but not so laid as to prevent the use of the streets by other modes of conveyance. If it did not suit the public convenience that the city should lay rails for the free use of the public, it followed from the premises that the city had the right of *selling* the right of way, for a specified time, to one or more persons who might lay rails for the purpose of running cars thereon.

We hold this to be good law, and further that a city has a right when it considers that the construction of a horse railway " in the most approved mode " will greatly promote the general good and prosperity of the city, to *give* away the right of taking tolls to any person or persons who will be at the expense of laying the tracks and operating the road as an inducement to such person or persons to make and operate a road promising so much benefit to the citizens generally.

Nor do we consider the objection that said railway is exempt from city taxation a good one. Whether said railway does or does not pay taxes is not a question properly enter-

ing into the question whether this road is a public nuisance doing such special damage to plaintiffs as to authorize them to file a bill in equity for its abatement.

The Circuit Judge, if left in doubt, by the record before him as to whether this road was a nuisance or not, did right in dissolving the injunction and permitting the owners to use their road until the final hearing. In the case of Hart vs. The Mayor of Albany, 3 Paige Chy. Repts., 210, 213, the Chancellor in delivering his opinion said : "If the evidence is conflicting and the injury complained of and sought to be restrained is doubtful or contingent, that alone will constitute a good ground for withholding this extraordinary power of the court to interfere by injunction."

We are of opinion that the Circuit Judge had reasonable ground for doubt, and are therefore of opinion that he did not err in dissolving the temporary injunction so as to allow defendants to continue in the use of their property till all the evidence should be regularly taken, the cause set down for hearing and finally adjudicated upon its merits.

The dissolution of the temporary injunction leaves the cause still in court, and if at the final hearing it shall appear that this street railway has been constructed in an unauthorized manner and is a public nuisance, and that plaintiffs have suffered or are likely to suffer special damage beyond and in addition to that which falls alike upon all by reason of its being laid on their soil, then the court will have jurisdiction to remove the track so far as it is laid on the soil of plaintiffs. The court has power to abate a public nuisance at the suit of a private individual so far as the nuisance is on his soil but no further. 19 N. J., (4 C. E. Green) 277.

If it shall appear from the evidence at the final hearing that this street railway in Hogan street, in front of the lot of complainants, is on the soil of plaintiffs, and has not been

laid down in the best and most approved mode of construct-
ing street railways as directed by the ordinance of the city
government, and is a public nuisance, then the injury done
to the soil of complainants, between their lot and the cen-
tre of the street, is an injury to the rights of complainants
as individuals in addition to the injury done to the general
public, and this suit is the proper remedy ; but on all other
parts of said street, even the part directly in front of their
lot, provided that it be on the west side of the centre of the
street, their only right is in common with the rest of the
public, and for any track on any part of the street not be-
longing to them, they cannot have relief in this suit
whether it is lawful or unlawful ; for an individual cannot
maintain a suit to restrain a public nuisance which injures
him only in rights enjoyed by him as one of the public.
Higby & Riggs vs. Camden, and Amboy Railroad Co., 19
N. J. Equity, (4 C. E. Green) 277 ; 19 N. J. Eq. Reports,
279 (4 C. E. Green) ; Alden & Wife vs. Pinney, 12 Fla.,
390 ; Z. Shea & Marlow vs. Hawthorne, 3 Neb., 179 ; 5
Blatchford, 368 ; 6 Blatchford, 487.

The decree of the Circuit Court dissolving the temporary
injunction is affirmed and the cause remanded for further
proceedings.

On the first day of the last named term an order was
made permitting the appellants to file a petition for rehear-
ing within thirty days, and suspending the judgment of the
court till the same should be filed, and, if filed within due
time, till the further order of the court.

A petition was filed within the time allowed.

At the June Term, 1882, Judge Walker delivered the
following opinion denying a rehearing :

The application for a rehearing in this case is based on
the allegation that the points on which the appellants relied

have not been responded to by the court in the opinion rendered.

The petition for rehearing alleges that " the use of a ' T ' rail instead of a ' U ' rail, *as prescribed by the ordinances*," (*of the city of Jacksonville*) " caused the whole litigation, was the basis upon which the appeal was sued out, and has not been noticed by the court."

When the court rendered the opinion in this case it was unable to discover, and it is now unable to discover, that the ordinances of the city of Jacksonville prescribe a " U " rail, and prohibit the use of a " T " rail as alleged in the petition. The ordinances attached as exhibits to the bill do not *anywhere* mention a " U " rail, and the only mention they make of a " T " rail is in section three, where it is ordained that over certain streets named in said section the company shall have the privilege of laying a certain description of " T " rail, to-wit: " T " rail " suitable for railway purposes."

Granting, for the sake of argument, that section three impliedly prohibits large " T " rail " suitable for railway purposes " on those streets not named in it, yet it is no violation of the inhibition to lay on other streets traversed by *street* railways a small and light " T " rail, *not* " suitable for *railway* purposes." A " T " rail of a hundred pounds to the lineal yard may be " suitable for railway purposes," but the grant of the right to use a " T " rail of a hundred pounds to the lineal yard on a *railway* over certain streets would surely not inhibit the right to use a " T " rail of ten pounds to the lineal yard on a street railway over other streets. *The implication cannot be broader than the grant.* The grant is that a " T " rail " suitable for *railway purposes*" may be used on certain streets ; this cannot imply that a " T " rail *not* " suitable for railway purposes," though it

28

may be suitable for *street* railway purposes shall *not* be used on other streets.

Section three provides for the building of *railways* over certain streets, and the only fair inference or implication is that *railways* should not be built over other streets but only *street* railways.

We think that the city government of Jacksonville, while prescribing what sort of rail might be used on *railway* tracks, did not intend, by implication or otherwise, to prescribe what sort of rail should not be laid on *street* railways.

The difference between a railway and *street* railway, commonly called a horse railway, is constantly kept in view in the city ordinances, and the difference is so vast that we cannot suppose that the City Council, while prescribing what sort of iron might be used on the former, meant by implication to prescribe what sort of iron should *not* be used on the latter.

And, besides, the City Council made so many *express* provisions as to the manner in which *street* railways should be built that we cannot think they intended to leave anything to implication.

The City Council expressly provide in Sections three, four and five that the tracks of the *street* railways shall " be laid down in the best and most approved mode of constructing *street* railways ;" that they should " be of even grade with the streets," * * * " so that carriages and other vehicles can cross said streets with ordinary ease ;" that they should " not be used for purposes of railway connection or the transportation of railway freight, or passenger cars, locomotives or engines ;" that " no freight shall be carried over them except the usual baggage of passengers or of persons going to or returning from market ;" and that cars over them shall not be run " at greater speed than that allowed to other vehicles."

JUNE TERM, 1882. 435

Randall et al. v. Jacksonville Street R. R. Co.—Opinion of Court.

These *express* provisions against interference with the ordinary use of the streets are certainly sufficient to prevent any, and the City Council, while making so many express provisions for that purpose, would surely have restricted the company to the " U " rail in *express* terms, and have prohibited the " T " rail in *express* terms, if they had intended to restrict the company to the use of the one or prohibit them from the use of the other. Instead of doing so, the City Council, as we have seen, *nowhere* use the term " U " rail, and nowhere use the term " T " rail, except in Section three as above quoted.

After the best consideration we have been able to give the subject, we think now as we did when we rendered the the opinion in this case that the city ordinances do not prescribe, by implication or otherwise, what pattern of rail the company may use in the construction of the *street* railway. We think the municipal corporation gave its assent to the construction of a street railway of any pattern, provided only that it should " be laid down in the best and most approved mode of constructing *street* railways," " and be even grade with the streets," " so that carriages and other vehicles can cross said streets with ordinary ease." The pattern of the rail was left to the discretion of the company, *these conditions being complied with.*

And it was because the allegations of the bill and answer and affidavits were so contradictory as to raise a reasonable doubt whether these conditions had not been complied with that this court affirmed the ruling of the Circuit Court dissolving the injunction, and sent the case back for final adjudication upon its merits after all the evidence that either party might be able to adduce should be fully before that court.

If it shall appear from the evidence that the conditions of the ordinance cannot be complied with if " T " rail be

used, on account of its unfitness for such a track as is required, then, of course, the decision will be that the conditions have not been complied with ; but a conclusion must be reached from the *evidence*, and not from any supposed *prohibition* of "T." rail in the ordinance, whether it be fit or unfit for street railway purposes.

The petition for rehearing states that " it was error in this court to affirm that this street railway was constructed over Hogan street under legislative authority and with the consent of the municipal corporation, when the bill and exhibits show, and the answer admits, that a ' U ' rail was prescribed and a ' T ' rail used."

We repeat that we cannot find in the ordinances any prescription of a " U " rail or prohibition of a " T " rail. And when the court in its opinion said " that this street railway was constructed over Hogan street under legislative authority and with the consent of the municipal corporation," it is plain from the context and head-note that the court did not mean to say that the railway had been constructed in the *mode* prescribed by the ordinances. That question was remitted to be decided by the Circuit Court on the evidence that might be before it at the final hearing. This fully appears in the following quotations from the opinion, to-wit : " The dissolution of the temporary injunction leaves the cause still in court, and if at the final hearing it shall appear that this street railway has been constructed in an *unauthorized* manner and is a public nuisance, and that plaintiffs have suffered or are likely to suffer special damages beyond and in addition to that which falls alike upon all by reason of its being laid on their soil, then the court will have jurisdiction to remove the track so far as it is laid upon the soil of plaintiffs." And again : " If it shall appear from the evidence at the final hearing that this street railway on Hogan street, in front of the lot of com-

plainants, is on the soil of plaintiffs, and has not been laid down in the best and most approved mode of constructing street railways, *as directed by the ordinance of the city government,* and is a public nuisance, then the injury done to the soil of complainants between their lot and the centre of the street is an injury to the rights of complainants as individuals in addition to the injury done to the general public, and this suit is the proper remedy," &c.

It is alleged in the petition for rehearing that there is " a suggestion in the opinion rendered that there can be no injury when the railroad does not occupy the whole street, but leaves room enough for a vehicle to pass." We are unable to find in the opinion on file any such suggestion. The language of this opinion is as follows : " Defendants deny that they have taken *exclusive* possession of that part of the street on which their track is laid, and aver that their track is so laid as to leave ample space on both sides of the road for the passage of persons, animals and vehicles, *and presents no obstruction to the free and customary use of said street for all the purposes of ordinary travel.*"

The statement in the opinion that " defendants deny that they have taken *exclusive* possession of that part of the street on which their track is laid," and that they aver that their track is so laid that it " *presents no obstruction to the free and customary use of the said street for all the purposes of ordinary travel,*" cannot, we think, be properly construed into a suggestion that there can be no injury when the road does not occupy the whole street, but " leaves room enough for a vehicle to pass."

Rehearing denied.